*Reversed and remanded.*

JOHN BARBER v. THE STATE.

*No. 798. Decided June 26th, 1895.*

1. **New Trial—Newly Discovered Evidence—Affidavit.**

A motion for a new trial on account of newly discovered evidence, which is not sworn to nor accompanied by the affidavit of the defendant or his counsel, is wholly insufficient.

2. **Same—Impeaching Evidence.**

A motion for a new trial will not be granted for newly discovered evidence which is strictly and purely impeaching in its character and effect.

3. **Objectionable Argument of Counsel—Practice on Appeal.**

To avail, on appeal, of objectionable remarks of counsel, the same must have been objected to at the time, and must have been perpetuated in a bill of exceptions.

APPEAL from the District Court of Lamar. Tried below before Hon. E. D. McClellan.

This appeal is from a conviction of robbery, with punishment assessed at twenty years imprisonment in the penitentiary.

Appellant is a negro who had, from his own statement as a witness, served a term in the penitentiary. The party robbed was an old negro who lived in the Chickasaw Nation Indian Territory, and who had come to Paris to employ an attorney to defend his son, who was under indictment in the Federal Court. His testimony, on examination in chief, was as follows:

Dave Franklin, the first witness for the State testified: "My name is Dave Franklin. I am about 65 years old. I live in the Chickasaw Nation, Indian Territory. I know the defendant, John Barber (points him out in court). I first met the defendant, John Barber, in Paris, Texas, on the night of December 8th, 1893. I first came to Paris to attend the Federal Court on the 7th day of December. On the evening of the 8th of December, about sundown as we call it, myself and David Lewis went over to the Exchange Saloon to get a glass of beer, and after we got in there, the defendant, John Barber, came in. When I went in there I had $180 in currency bills, consisting of ten dollar bills and twenty dollar bills; but I do not know how many of each kind I had, but know that there were some twenty and some ten dollar bills, and that they amounted to $180. After I went into the saloon, I purchased a pint of liquor and had the barkeeper to change a ten dollar bill for me, and he gave me back a five dollar gold piece and four dollars and fifty cents in silver, but I cannot describe the silver pieces. The bills were currency bills and all of said money was currency money of the United States of America, but I cannot give a better description of it. It was my property, and was of the aggregate value of $179.50. After the barkeeper gave me my change, I put all my money in my left hand pants pocket. I turned around and commenced talking to the defendant, and after talking for some time, I told him I had to go to Mr. Johnson's law office, and defendant said he would walk over there with me. Prior to this time David Lewis had gone to supper. Lewis left me talking to defendant. Defendant and me walked out of the saloon and went over to Johnson's law office, but Mr. Johnson was not there, and then I told defendant that I would go to my boarding house. Defendant asked me where I boarded, and I told him I was boarding at Laura Todd's. Defendant then said that he boarded there also. I looked at defendant and said: 'I never saw you down there.' Defendant said, 'yes, that he boarded down there and that he and Laura Todd were great friends, that her husband and his wife used to work together at a big hotel here in Paris; and defendant said he would go down with me. We then started in the direction of Laura Todd's boarding house, and was talking all the time, and, when I noticed we had passed the street that turns off to Laura Todd's, and were in a part of the city that I had never been before, I said to defendant: 'We have gone down this street too far for Laura Todd's.' Defendant said: 'Yes, but we can go right through here,' and we turned up a dark street. After we got out of the electric light defendant hit me with something and knocked me down and almost killed me. I do not remember much

after he hit me, but I remember of him catching me by the throat and choaking me so that I could not helloo, and remember him saying: 'Give it up, God dam you, or I will kill you.' Defendant then run his hand into my pants pocket, where my money was, and when I came to myself the pint of whiskey and all my money was gone. He almost killed me and I could not resist him taking my money. I thought that I was killed. He left me lying on the ground unable to get up. I had no sense and my eyes were almost out. Some one came along and took me to Laura Todd's; I do not know who he is, but he is a colored boy, and he is in the witness room. The defendant took all of the money described by me above, amounting to $179.50, from my pocket without my consent, and after he had knocked me down and almost killed me. He took my money from my pocket in Paris, Lamar County, Texas, on the 8th day of December, A. D. 1893. I was considerably bruised up, and still feel the effect of the lick defendant gave me that night. My eyes were almost knocked out by the blow defendant gave me on the head. I do not know what he hit me with, it was done so quick that I could not tell. I saw the defendant the next morning at the examining trial, and then I recognized him as the man who robbed me. I looked at defendant close that night before I was robbed, because he said he boarded at Laura Todd's, and I was trying to see if I could recognize him. It was very bright in the saloon—several lights in there, and there was an electric light burning in front of Mr. Johnson's office. I know he is the man that robbed me, and I could not be mistaken."

Frank Jones testified: "That he knew defendant, John Barber, well; had known him a number of years; that he was porter in the Court Exchange Saloon, and the night old man Franklin was robbed saw John Barber in the Court Exchange Saloon, talking to Franklin early in the night, and after 6 o'clock p. m."

J. A. Burris, bartender in the Court Exchange Saloon, testified to the same facts as did Frank Jones.

Dave Lewis, who went to the saloon with Franklin, says: "After we drank our beer I went out and left Dave Franklin in the saloon talking to the man who, I think, was the defendant, John Barber."

The defense was an alibi, defendant claiming that he had gone to Roxton, some 15 miles from Paris, that day, and returned on the train that evening. The effort was to show that the train got in after the robbery occurred. The telegraph operator, in rebuttal, testified that the train reached Paris from Roxton that evening at 6:15 p. m., on time.

No briefs for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of robbery, given 20 years in the penitentiary, and prosecutes this appeal. There are no bills of exception contained in the record. There were two issues presented by the evidence for the consideration of the jury, robbery and

alibi. These issues were submitted by the charge in correct and appropriate terms. After a careful review of the evidence we are of opinion the verdict is fully justified by the testimony. As a ground of the motion for a new trial it is alleged that one Frank Austin would testify on another trial, if present, that the injured party made to him statements at variance with his testimony delivered on the trial. The motion for a new trial is not sworn to, nor does the affidavit of appellant or his counsel accompany the motion. This is in no sense a compliance with the law, and. besides, the testimony is strictly and purely impeaching in its character and effect. Wilson's Cr. St., § 2544. If the remarks of State's counsel occurred, as stated in the motion for a new trial, they should have been objected to at the time, and perpetuated in a bill of exceptions. This was not done. Wilson's Cr. St., § 2321; Mason v. State, 15 Texas Crim. App., 534; Jackson v. State, 18 Texas Crim. App., 586; Watson v. State, 28 Texas Crim. App., 34; Wilson v. State, 32 Texas Crim. Rep., 22; Davis v. State, 32 Texas Crim. Rep., 377; Wolfforth v. State, 31 Texas Crim. Rep., 387. The evidence is sufficient to sustain the verdict, and the judgment is affirmed.

*Affirmed.*