### Jim Dick Stewart v. The State.

#### No. 3723.   Decided November 20, 1907.

**Burglary—Motion for New Trial—Newly Discovered Evidence.**

Where upon motion for new trial, in a case of burglary where it was extremely doubtful that the evidence was sufficient to sustain a conviction; and the affidavits of witnesses attached to the motion with reference to newly discovered evidence showed that the proposed testimony was close enough to the main fact, coming from the injured party, that it would come within the rule laid down by this court in regard to admitting res gestæ statements, a new trial should have been granted.

Appeal from the District Court of Camp.   Tried below before the Hon. P. A. Turner.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Sam D. Snodgrass,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State

DAVIDSON, Presiding Judge.—This is one of those very close cases on the facts. It is extremely doubtful if the evidence narrated in the record before this court, is sufficient to justify the conviction of appellant for burglary charged against him. The main witness for the State is the alleged owner, whose father also accompanied him to the house alleged to have been burglarized, and the evidence disclosed from these witnesses that some one had entered the house where some turkeys

had been placed. A great number of these turkeys had been purchased by the owner and placed in this house for marketable purposes. When the witness opened the door, the party who was in the house, in running out, ran against the door and knocked the witness down into a ditch and ran away. The witness did not identify the party and stated that he did not know who it was, whether a negro or white man. Appellant is a negro. By the time the witness had recovered himself to his feet, the supposed burglar had gotten some seventy-five yards away, running, and witness gave chase. The party being chased ran to the depot and there was lost. The witness went to the depot, looked in through a window and saw a negro occupying one of the seats in the negroes' waiting room, either asleep or apparently asleep. He did not enter the depot but went away. There were other windows to the depot on the opposite side from that looked through by the witness. He identified the sleeping negro as appellant. He secured the services of an officer within a half hour or such time, and went to appellant's house and found him in bed. He was aroused by the officer and placed under arrest. The officer's name was Guest. Mr. Guest, when he went in, said: "Jim, what were you doing up yonder.in that barn among those turkeys?" He said, "Mr. Guest, what turkeys?" He said, "Mr. Mahaffey's turkeys." Appellant said, "Where are they at?" "In that old barn up there" (and he called the name of the barn). Appellant replied, "You are talking to the wrong nigger," and said, "I haven't been up there nowhere since 6 o'clock. I came home at 6 o'clock and haven't been there since then." Q. Is that all he said, "I came home at 6 o'clock and haven't been down there since then?" A. "Yes, sir." He asked him then, what was he doing at the Cotton Belt depot, and he said he hadn't been there since 6 o'clock. He repeated, that he hadn't been away since that hour. There were no turkeys taken. The witness for the State did not go into the depot but states that he called to the negro sleeping in the depot twice, but there was no response from the negro, or any evidence that he heard him.

Attached to the motion for new trial are the affidavits of certain parties which set out newly discovered testimony. The law has been complied with in so far as diligence and those matters are concerned with reference to that phase of the case, showing diligence, and other matters necessary to lay a predicate in regard to the discovery of newly discovered testimony. The question is whether this testimony is of sufficient importance and materiality to have required the granting of the motion for a new trial on this ground? Two of the witnesses, Pitts and Baird, stated in their affidavit that they met the alleged owner on the night of the supposed burglary and that he was excited and told affiants that he had just run a negro out of his turkey house, and that he had chased him to the waiting room of the Cotton Belt deport. That the parties then asked Mahaffey who the negro was, and said Mahaffey replied: "As I opened the back door of the house a party ran out, knocking me into a ditch; I got up as quick as I could and pursued him in the direc-

tion of the Cotton Belt depot. When I was about seventy-five yards from the depot, the party went into the colored waiting room, I could tell it was a negro, but I did not know him, and I went on up to the waiting room of the depot, but I did not know who he was. The negro that I saw sitting in the waiting room was a stranger to me." Shortly after this conversation occurred, one W. C. Sturkey came down to the barn where said turkeys were housed, and affiants, together with Sturkey and the said Mahaffey, went to the colored waiting room of the Cotton Belt depot to see who the negro was that the said Mahaffey reported was in the depot. When they reached the depot, there was no person in it. Affiants further state that when Mahaffey made the statement that he did not know the negro, that he chased into the depot, and did not know him after he saw him sitting in said waiting room, the said Mahaffey appeared to be excited, and showed that he had just experienced some violent exercise, in that he was breathing hard, and fast, and made the statement in an excited manner. They then show that neither of them had ever told defendant or his counsel about the matter stated, until after appellant's conviction and that the reason they did not, was, that they did not know and had no reason to believe that Mahaffey would testify that defendant was the negro that he saw sitting in the colored waiting room; that after affiants heard of defendant's conviction in this case, they voluntarily went to the defendant's counsel and told him for the first time what they knew.

We are led to believe that the reason why the trial court overruled the motion for new trial in regard to this ground, was that the testimony would be simply impeaching in its nature. While, of course, if it contradicted the testimony of the State's main witness, to that extent would be a contradiction, yet, we think this testimony was close enough to the main fact, coming from the injured party, that it would come within the rule laid down by this court in regard to admitting res gestæ statements. This occurred evidently within a few moments of the time that he chased the negro. He had stated that when he went to the depot, he recognized the sleeping negro sitting in said depot as appellant. Almost immediately after that and while in an excited and heated condition, he stated to these witnesses that he did not know who this negro was that he saw in the depot. He was the injured party in the transaction, and we are of opinion that this testimony is res gestæ and was admissible as such.

Speaking of res gestæ in the case of robbery, which is an aggravated form of theft, it has been said that, "outcries and declarations in the pursuit of the robber, or attempt to arrest him, have been admitted, and the fact of a complaint being at once made by the person robbed has also been held competent," citing Driscoll v. People, 47 Mich., 416; People v. Hicks, 98 Mich., 86; State v. Smith, 26 Washington, 354; Lambert v. People, 29 Mich., 71; People v. Morrigan, 29 Mich., 4; also Bow v. People, 160 Ill., 438; State v. Driscoll, 72 Iowa, 583 (4th volume Elliott on Evidence, section 3134). "There is some reason for admitting the

fact of the recent complaint, or allowing the reason for not making it to be explained in order to repel an adverse inference, as in rape cases, but on this theory the fact of the complaint only, is admissible and not the details. It might be also that such complaint, and perhaps the details, would be admissible on the theory of rehabilitating a witness by showing prior consistent statements where the victim had testified and the defendant had sought to impeach him as having recently fabricated his story. But the American cases do not seem to proceed on any definite theory, even where they admit such evidence, except that it is generally conceded that it should be admitted if part of the res gestæ. Some of the decisions hold that it is not admissible, ordinarily at least, if not part of the res gestæ, while others seem to admit in some other instances but do not clearly show upon just what theory it is held competent."

There would be no question whatever to the admissibility of this testimony as contradictory of the testimony and statements of the witness for the State, and it is not denied in the motion for a new trial that said witness made these statements. So we take it as true that they were made as the witness stated. But we are not discussing the rule as to how the jury might look at it, even if the statements had been denied by said alleged owner.

These statements were so close in time to the transaction itself in regard to chasing and seeing the negro in the depot, we believe it was a part of the res gestæ and should have been admitted; and for this reason the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.