BOB PIPER v. THE STATE.

No. 254.　Decided January 12, 1910.

**1.—Aggravated Assault—Newly Discovered Evidence—Motion for New Trial.**

Where, upon appeal from a conviction of aggravated assault, the affidavit attached to the motion for new trial, and which was not controverted by the State, showed a conspiracy on the part of a third party and the chief prosecuting witness to bring about an illegal conviction on manufactured or perjured testimony, the court erred in not granting a new trial.

**2.—Same—Charge of Court—Ability to Commit an Assault.**

Where, upon trial for aggravated assault, the evidence showed on the part of the defense that defendant was not within reach of the woman alleged to have been assaulted by him, and the court had failed to submit the law as to defendant's ability to commit an assault as applied to the facts, and had refused a special requested charge thereon, the same was reversible error, although the court had submitted a general definition of the law on this point.

Appeal from the County Court of Ellis.　Tried below before the Hon. J. P. Spencer.

Appeal from a conviction of aggravated assault; penalty, a fine of $25.

The opinion states the case.

*Clyde F. Winn,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an aggravated assault upon Mahala Drake, a woman.

The State's case is sustained by the testimony of the witness Mahala Drake, who testified about as follows:　That appellant and two other white men came by her house in a buggy; she remarked to them, "This aint a public road through here; Mr. Harbin had told us not to let anybody pass through the farm."　Appellant replied, "I don't give a dam."　She said:　"You talk so bigoty about it.　I was just going to tell you the way through here."　Appellant said, "Damn you."　Witness says:　"He acted sorter like he was going to come towards me, I said, 'Don't come or I'll blow your brains out.'　I don't know when he jumped out of the buggy.　He said, 'What in the hell and god dam nation do I care for your gun, you dam black bitch, I'll cut your head open with this axe.'　He was picking up the axe when he said this.　I ran.　I have no idea at all how far off my husband was.　Bob Piper ran up to

the front door of the house in which I was standing when we were talking to each other, and I turned and ran out of the back door of the house. Bob Piper came in at the front door. He struck at me two times with the axe, but did not hit me. When he got into the front door, I ran out of the room, through the middle door; it was a small room. Bob Piper did not run out of the back door after me; when I got out of the back door, I called to my husband." The road these men were traveling run in about eight or ten feet of the house, and had been used by the public for 15 years or longer. The two Tittle boys were in the buggy with appellant. A soon as the trouble came up they drove off down in the gully some twenty steps away. They both testified to practically the same thing, and almost identically in the same manner, that they were driving along the road going to Chambers creek fishing as was appellant; that they were in a road commonly used by the public in going to and from Chambers creek. About a mile from the creek they passed a negro cabin in the front door of which stood the witness Mahala Drake. Appellant said to her, "Aint you afraid your house will blow off the blocks?" The house was upon high blocks, and there had been recently a storm in the neighborhood. That Mahala Drake replied, "This is no public passway through here and you can't go through here." Appellant replied, "We are already on our way and will go through this time." Mahala Drake said, "White man, don't you start nothing here, I've got a gun here and I will blow your brains out," and as she said this she turned back into the house. Appellant jumped out of the buggy and grabbed up an axe and ran hurriedly towards the door. At this juncture the two Tittle boys drove down in the ravine, which was about six or eight feet deep and some fifteen or twenty steps from the house. They both denied emphatically that appellant cursed Mahala Drake, or used any profane language imputed to him by her. When Mahala Drake said, "This is not a public passway through here," appellant did not reply, "I don't give a dam." Nor did he reply to Mahala Drake when she said, "I've got a gun here and I will blow your brains out." Appellant did not reply, "What in the hell and god dam nation do I care for your gun, you dam black bitch, I'll cut your head open with this axe." He did not say this or anything like this. They did not see what occurred after they drove away. Appellant took the stand in his own behalf, and stated he had lived in that neighborhood twenty-five years, and practically as did the Tittle boys, that they were going fishing over a road through the Harbin farm which had been used for fifteen years by the public in going to and from the Chambers Creek. When they came to the negro cabin referred to Mahala Drake was standing in front of the door. He remarked to her, "Aint you afraid your house will blow off of those high blocks?" She replied, "This aint no public road through here and you can't go

through." Appellant replied, "Well, we've done started now and we will go through this time." She said, "White man, don't you start anything here, I've got a gun and I'll blow your brains out." When she said this, appellant says she turned around and started back in the house, and that he jumped out of the buggy, picked up an axe that was lying near, and said, "Do not get that gun, if you do you will have to use it." Appellant says he ran hurriedly towards her. When she saw him coming she ran out of the back door of her house; he was then at the front door, but did not go into the house. He did not strike at her with the axe; was not close enough to her to hit her with it. He further says when he saw her run out of the back he turned and went back to the buggy, and they went away. He says, "I got the axe and ran towards the negro woman Mahala Drake solely for the purpose of preventing her from getting a gun and shooting me." He got in his buggy and they went on their fishing excursion. He testified he did not use the language imputed to him by the woman, and that it was "entirely false and untrue;" that he used no vulgar or profane language of any kind towards her on this or any other occasion. This is practically the case on the facts.

1. Among other things, appellant sought a new trial on the ground of newly discovered evidence. Without going into a detailed statement of these matters, the evidence is set forth in an affidavit of the witness Ferguson about as follows: He says he was summoned as a witness by the State in the above styled and numbered cause, and was attendant as a witness in the trial of said case, and that at the time of the trial of said case he lived near the village of Avalon, Texas, on a farm under the management of W. D. McClure, and that he still resided near said village of Avalon, and that he was personally acquainted with W. D. McClure since February, 1909, and also acquainted with Mahala Drake for the same length of time. "I further testify that I heard the following conversation between W. D. McClure and Mahala Drake, about 1 o'clock p. m., June 15, 1909, at the home of W. D. McClure, near Avalon, Texas, at his lot gate, these persons being present, W. D. McClure, Jordan Watson, Mahala Drake, Dave Aikens, and myself, the conversation between the said McClure and Mahala Drake, being as follows: "W. D. McClure called Mahala Drake off about ten feet from me, and said to her, 'You must swear that Bob Piper picked up the axe, and that he threw it at you, then picked it up and ran to the door, and went into the house and struck at you twice,' Mahala Drake replied to McClure, 'All right, I will swear it.' My business over there was to come to Waxahachie, with McClure, as I was summoned as a witness by the State, in this case against Bob Piper for striking at the negro woman, Mahala Drake with an axe. I heard W. D. McClure say several times before the trial of this case that

he was going to stick Bob Piper if he could, and was going to make it as hard for Bob Piper as he could.

"On the afternoon of June 15, 1909, myself, W. D. McClure, Mahala Drake, Dave Aikens, Millard Runnels and Jordan Watson came to Waxahachie, Texas, and later in the evening of the same day, about dark on the south side of the public square, about midway of the curb, and near same, which runs along the south side of the courthouse lawn, W. D. McClure called myself, Mahala Drake, Dave Aikens, Millard Runnels and Jordan Watson and said to us, 'We want to find out and agree on what we are going to swear, as we are going to have to work this thing close to stick Bob Piper.' McClure then said to Mahala Drake, 'You are going to swear what I told you to, are you?" and Mahala Drake replied, 'Yes.'

"I first told Bob Piper about this about four weeks ago, at Avalon, Ellis County, Texas."

This communication by Ferguson to appellant was subsequent to his trial, and was made a part of the amended motion for a new trial. The other matters connected with the motion for a new trial show that appellant was ignorant of the matters set out by Ferguson as were his attorneys until the communication by Ferguson to appellant. This testimony, in a certain sense, is impeaching, but it is more than that, it shows a conspiracy on the part of McClure and this woman to bring about an illegal conviction on manufactured or perjured testimony, if Ferguson's statement is correct. There is no controverting affidavit, nor any attempt at controverting this affidavit of Ferguson, and it stands in the record uncontroverted and unimpeached, although names of witnesses, the language used, and particularities of the transaction occurring between McClure and Mahala Drake, and the other things mentioned in the affidavit of Ferguson were set out with great particularity in said affidavit. The State could have easily met this affidavit and the facts set out in it if they were not true by the testimony of the parties named by Ferguson as being present at both conversations mentioned by him, but the State did not see proper to do so, nor was there any attempt on the part of the State to meet this affidavit. We, therefore, will presume that the matters are correctly stated in said affidavit. This evidence was of such nature, importance and character as that the trial court should have granted the new trial under circumstances stated. These matters were directly pertinent to the crucial point relied upon by the State for conviction, to wit: that appellant followed Mahala Drake in the house and struck at her twice with the axe, and because a new trial was not granted the judgment will here be reversed.

2. There is another matter that it is well enough to call the court's attention to in reference to the charges. The court charged the jury the statute with reference to the ability of a party making

the assault to commit said assault by the use of the means with which he attempts it, and must be within distance, etc. He also charged that it would follow that one who is, at the time of making an attempt to commit a battery, under such restraint as to deprive him of the power to act, or who is at so great a distance from the person assailed, as that he can not reach his person by the use of the means with which he makes the attempt, is not guilty of an assault; and also in reference to the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, etc. These general definitions were given, but not in applying the law to the facts. Appellant asked a special charge directly applying these matters to the facts of the case, which was refused. Upon another trial this special charge should be given. The issue is sharply raised by the testimony that appellant was not within the reach of the woman. While to some extent it is a controverted issue, yet the accused has the legal right to have his side presented fully and affirmatively to the jury.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

McCord, Judge, not sitting.