## RALPH DUNCAN v. THE STATE.

### No. 8002.   Decided January 30, 1924.

**Rape—Female under Age—Newly Discovered Evidence—Motion for New Trial.**

Where complaint is made of the refusal of a new trial because of newly discovered evidence and affidavits were appended to the motion for new trial, and the court heard evidence thereon, and the absent testimony was such, although of an impeaching character, that this court cannot say that the jury would not have reached a different verdict, a new trial should be granted and the judgment is reversed and the cause remanded.

Appeal from the Criminal District Court of Tarrant.   Tried below before the Honorable Geo. E. Hosey.

Appeal from a conviction of statutory rape upon a girl thirteen years of age; penalty, eleven years imprisonment in the penitentiary.

The opinion states the case.

*Mays & Mays,* for appellant.—Cited: Ellison v. State, 144 Pacific Reporter, 10; Tinker v. State, 253 S. W. Rep., 531.

On question of newly discovered evidence: Anderson v. State, 248 S. W. Rep., 681; Cotterell v. State, 237 id., 928; Gainier v. State, 232 id., 830.

*Grover C. Morris,* Assistant Attorney General, *R. K. Hanger,* District Attorney, and *Jesse M. Brown,* Special Prosecutor, for the State.   Cited: Hamilton v. State, 36 S. W. Rep., 373; Ramsey v. State, 63 S. W. Rep., 875; Hill v. State, 77 id., 808.

On question of newly discovered evidence: Walker v. State, 17 Texas Crim. App., 17; Rodriguez v. State, 23 id., 507; Barnard v. State, 45 Texas Crim. Rep., 71; Dean v. State, 47 id., 245; Bice v. State, 61 id., 136; Wilson v. State, 154 S. W. Rep., 1015; Cooper v. State, 162 id., 365.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Tarrant County of rape, and his punishment fixed at eleven years in the penitentiary.

The conviction was for statutory rape of a girl thirteen years old who lived in Fort Worth.   On the night of December 8, 1922, she went with her sixteen year old brother to a party at the home of T. M. Mirike, seven or eight miles west of the city, and there met appellant and Curley Owens, both of whom had gone out to the affair in a Hup roadster.   When the party broke up prosecutrix went back to town with the two boys in their car.   Her story is that when they reached her home in the southern part of Fort Worth her brother had not gotten there and they drove some two blocks south, Owens

96 T. C.—28

driving, then stopped the car and assaulted her. She says that both boys got out and that appellant caught hold of her and pulled her down on the seat under the steering wheel and in this position while appellant held her hands and placed one of his hands over her mouth, Owens put one of her feet on the back of the seat and one on the floo of the car and had intercourse with her. She swore that he unfastened and took off her bloomers, got on top of her and put his private parts into hers, penetrating her several inches. She said she could not kick nor halloo. When Owens got through, she said he got off and out of the car and went around to where appellant was and took hold of her hands and held her while appellant had intercourse with her. She also swore that this was her first experience of this nature and that it hurt her. She said they all then got into the car and appellant cranked it and they drove her back to her home. About two minutes after she got there her brother came and the two went in the house together. She said nothing to her brother about what had taken place, nor to her mother who was awake and talked to them. The mother swore that the next morning she went into the room where prosecutrix slept, turned the cover off the girl and observed the absence of her bloomers, which witness said the girl always slept in. This fact was contradicted by prosecutrix who swore that she never slept in her bloomers. Any way the bloomers were gone and the mother asked prosecutrix where the bloomers were and she replied "they are somewhere". This alleged rape was on Friday night. On Sunday following the mother was informed for the first time that prosecutrix had not come home with her brother. She says she then whipped prosecutrix and afterward examined her clothing and found some small spots of blood on the rear part of the underskirt. She questioned prosecutrix as to the conduct of the boys with whom she came home but got no satisfaction. Thursday she took prosecutrix to the office of Dr. Lowry, who also testified. He said that he declined to examine the girl because she told him the young men did nothing to her. The mother again took the girl on Saturday to where she was examined by three physicians. These three doctors all testified that she had been penetrated at some time and that they found her unusually well developed; that her private parts were large enough to permit intercourse without any trouble or apparent pain. Each of these gentlemen testified on cross-examination in substance as did Dr. Braswell when he said: "The fact of her development and condition would be at least an indication of frequent intercourse."

Appellant testified and denied intercourse with prosecutrix but said that when they reached her home her brother had not come and she said her mother might whip her if she went in without her brother, and that she suggested that they drive around until he came. Appellant testified that they drove around the block several times

and then prosecutrix said, "You have to work and I will get out and wait on the porch for him." That Owens asked her for her telephone number, which she gave him and that they then took their departure. He said that Owens later called the girl over the telephone in his hearing and had a conversation with her. Prosecutrix also testified that she gave Owens her telephone number and that he later called her up and talked to her. Appellant further testified that he saw nothing out of the way about the girl and that they treated her with absolute courtesy and propriety. On Monday after the alleged rape appellant said he learned from a man named Ross that the girl was charging them with raping her. They were arrested on the Saturday following this Monday. A number of wit- nesses testified to the good reputation of appellant. The fact was in testimony that there were arc lights at the street crossings at or about the block where the alleged rape took place; also that there were residences near by.

Complaint is made of the refusal of a new trial because of newly discovered evidence. Affidavits were appended to the motion and when same was presented evidence was heard by the learned trial judge. Lavada Moser swore that she was present when Owens was tried immediately following the trial of appellant, and that she heard the assistant district attorney in his closing argument in the Owens case refer to the missing bloomers and to the supposed fact that one of the defendants had them. She said that she was at the party at Mr. Mirike's and when she heard this argument she said to a lady sitting near her, "O, I know where these bloomers are; they are at Mr. Mirike's house"; that information of her statement reached appellant's attorneys and they obtained her affidavit. In same she further stated that at the Mirike home on the occasion of the party a number of girls, among whom was prosecutrix, put on boys' pants. That with her bloomers on prosecutrix could not get into the pants selected for her and that she pulled her bloomers off, and affiant ob- served that when she donned her own clothes later, prosecutrix did not put back on her bloomers. Affidavits were obtained and also evidence heard from Mrs. Mirike and her two daughters to the effect that the morning following the party they found in their home a pair of bloomers which belonged to no one residing there; that no one claimed them and they were altered and worn by the fourteen year old daugh- ter of the Mirikes. The State traversed the allegations of appellant's motion for new trial, and on the hearing thereof the bloomers at the Mirike home were produced and prosecutrix and her mother affirmed that they did not belong to prosecutrix and, therefore, were not the ones worn by her on the night in question.

We think the record sufficiently shows the evidence to be newly discovered. In addition to the refusal of his motion for new trial,

appellant has a bill of exceptions complaining of the refusal of testimony from Essie Lee Mirike to the effect that on Sunday following the alleged rape she saw prosecutrix and had a conversation with her in which the latter told her that the conduct of appellant and Owens to her the night they brought her home, was perfectly lovely.

In Hamilton v. State, 36 Texas Crim. Rep., 374, appears the following language used by this court:

"Of course, in every case, whether the party is of the age of consent or not, it would be a strong circumstance of corroboration if it be shown that the party made outcry at the time, or that recently thereafter she made report of the matter."

Mr. Branch, on page 1002 of his Annotated P. C., states on the authority of Ramsey v. State, 63 S. W. Rep., 875, that when the female is under the age of consent, failure to make outcry can be used to rebut the idea of carnal knowledge at all. By easy analogy,—if mere failure to make outcry in such case has probative force as rebutting the fact of carnal knowledge at all,—then surely positive declaration inconsistent with the fact of intercourse must not only be admissible but be of greater force as rebutting the fact of intercourse. In force cases many authorities hold a conviction not supported when the facts show failure to report the occurrence until after the appearance of some motive to disclose other than the fact that the woman had been assaulted. In Sec. 1786 of Branch's Annotated P. C., appear authorities supporting this proposition. While the instant case is in allegation a consent case because of the age of prosecutrix, in testimony it is a rape by force. Examination of the record reveals that there was no outcry and no disclosure until a week had passed and there had been repeated denials of intercourse on the part of prosecutrix and apparently a good deal of pressure accompanied by punishment on the part of her mother. The fact that appellant and Owens brought the girl to her home both before and after the alleged rape, is not denied; nor is it undisputed but that they brought her from the party through river bottoms and along country roads and there made no assault, but it is asserted that after driving into a great city and to her home that the accused took her to a point a block or more away from her home and near residences and city lights, by force one after the other raped her. After making this assault upon her it is admitted that they took her home, obtained her telephone number and afterwards one of them called her up over telephone and talked to her. It is undisputed that she waited for her brother and that the two went into the house together, and that she said nothing either to her brother or her mother. When questioned as to her bloomers, for some reason she declined to divulge that she had left them at Mirike's, if that fact be true, but said they were "somewhere." She denied to her mother and the doctor any criminal connection with either of the accused. Not only this, but in conversation with her girl

friend, if we accept the allegations of the bill of exceptions as speaking the facts, she affirmed that their treatment of her was all that it should be.

While it is the rule ordinarily that a new trial will not be granted for newly discovered evidence which is wholly impeaching, we have never said or held that exceptions could not arise to this rule. We have before us a case in which the State relies, as we view it, alone on the testimony of the prosecutrix to show intercourse with her. Nothing in the medical testimony points to appellant, but on the contrary the tendency of such testimony is not only to raise a strong doubt as to the truthfulness of the prosecutrix when she says this was her first experience. We are bound to conclude that her repeated denial of this act of intercourse would further discredit her, as would her failure to make outcry. Her story of the where and how of the act, on a public street of a great city, near residences and lights and that the upper part of her body was under or behind the steering wheel of a roadster on the seat of which she says she was lying when raped; as would also the testimony of the fact that she had just driven over country roads and river bottoms, all seem to make this a case upon very close lines.

As an integral part of her story she seeks to lay the loss of her bloomers upon her alleged ravishers. We can not say that the jury would not have believed the witness who swears that prosecutrix removed her bloomers and left them at Mr. Mirike's before she came home; nor that they would refuse to accept the evidence that the pair of unclaimed bloomers found at the Mirike home belonged to her. Nor can we say that her conversation with her intimate friend would not have affected the jury's belief of the truth of her story of the intercourse. Nor can we say these facts would only be material as affecting the question of her consent. We do not so consider but believe that all such testimony might be taken as rebutting the proposition that intercourse was had at all with her by appellant. These are jury questions and in our opinion should be permitted to go before them for what they may believe the testimony to be worth as affecting the credibility of the witness and the fact of her having had the alleged intercourse.

For the errors mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*