## Robert Hale v. The State.

No. 14942.   Delivered March 23, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 611.

The opinion states the case.

*Byron Skelton,* of Temple, and *James K. Evetts, Jr.,* of Belton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, five years in the penitentiary.

The testimony shows that three young men had been going from place to place in a car, drinking and gambling. The party consisted of appellant, one Kelley and deceased. Appellant had recently come into possession of some money. The three were in Bartlett, Texas. Appellant seemed to have come to a conclusion that he had been mistreated by one or both of his companions. He had a pistol, and went with Kelley to at least two hardware stores in Bartlett for the purpose of getting cartridges, but, owing to signs made to the dealers by Kelley, they would not sell him any. Appellant left his companions at Bartlett and drove alone to Granger where he bought cartridges for the pistol and returned. That same day the killing occurred. Kelley testified for the state. Relating to the immediate occurrence, he said that deceased was driving the car, and that appellant pointed the pistol at deceased who then stopped the car. Appellant pointed the pistol at witness who got out of the car and started running. He testified that he looked back and saw appellant out of the car and heard him call to witness that he was just playing. Witness saw deceased in the car under the steering wheel. He said appellant came around the side of the car from the back and shot. Deceased at the time appeared to have his hands on the steering wheel and was doing nothing to appellant. After the shot was fired witness ran on through a field. Two witnesses who were going after a load of corn testified they passed the car at or very near the place where the killing occurred, and saw one man in the car, another out of the car by the side of same, and still another party in the field. These witnesses went on, got their corn, and came back and found deceased dead in the car. The undertaker who handled the body of deceased, testified that he was called to the scene and found deceased sitting in the car under the steering wheel, his hands in his lap, and his left foot on the clutch of the car. He was shot through the eye, it appearing that the bullet had gone into the head some distance. That probably death was instantaneous. This witness said he found some small change and a penknife in the pocket of deceased, the knife being closed.

Appellant made a written statement the next day after the homicide in which he claimed he was drinking, but remembered leaving Bartlett. He said he did not remember what happened on the road, or how

deceased was killed, or who killed him. This statement was offered in evidence by the state after appellant had given testimony in a rambling, somewhat incoherent, story that he and deceased were scuffling over the pistol and same was accidentally discharged, or else some one else fired a pistol at that time. There was testimony pro and con in regard to appellant's mental unsoundness, and this issue was submitted in the charge of the court.

The record contains six bills of exception, each of which had been carefully considered. If we understand the record, the first five of said bills complain of matters to which objections were made at the time of their occurrence, and again in the motion for new trial, but no bill of exception in any instance was taken to the action of the court until after the motion for new trial was overruled. This is not in accord with our practice which requires that a bill of exception be promptly taken to any ruling objected to, and that the taking of same for the first time in connection with the overruling of the motion for new trial is not in compliance with our statute. However, in as much as the form of these bills is such as to leave some doubt in our minds, we have considered each of them.

Bill No. 1 complains of a question propounded by the district attorney to witness Kelley, in effect, if appellant did not point his pistol at witness also. There is nothing in the bill which shows that the question was answered, but inferring from what is said in the court's qualifications that it was answered in the affirmative, we agree with the trial court that the matters was res gestae. The same is true of bill of exception No. 1-A which complains of the answer given by said witness to the same question.

State witness Kelley admitting on cross-examination that he had been indicted for burglary in Llano county, that he pleaded guilty and was given a five-year suspended sentence, we fail to see any injury in the court's rejection of documentary proof of such conviction, in the shape of the judgment and sentence which were offered in evidence by the appellant. Same would have added nothing to the discrediting effect of witness' admission. True, in connection with his admission witness said he was not guilty. The written judgment and sentence would no more show his actual guilt than did the admissions which the witness made before the jury.

The confession introduced in evidence and made by appellant contained the written statutory warning. This made it admissible. Wilson v. State, 103 Texas Crim. Rep., 403, 281 S. W., 844; Crowley v. State, 92 Texas Crim. Rep., 103, 242 S. W., 472. Complaint of the admission of such confession, appearing in bill of exception No. 4, was not sound. Testimony of the sheriff and other officers of Bell county who saw and talked with and observed appellant frequently between the time

of this homicide and his trial, to the effect that they were of opinion that he was not insane and that he knew it was wrong to kill a man, in conjunction with the statement of their opportunities for observation, was correctly received.

Appellant sought a new trial in part on the ground of newly discovered evidence, attaching to his motion the affidavits of three parties, each of whom set out statements claimed by him to have been made by state witness Kelley after the homicide, and which appellant insists were at variance with the testimony of Kelley as given upon the trial. If this contention be true, this would be but impeaching Kelley by proof of contradictory statements. No better settled rule is found in the decisions of this court than that a new trial will not be granted for testimony merely impeaching. In section 202 of his Annotated P. C., Mr. Branch cites probably a hundred cases in support of this proposition, among others, Barber v. State, 35 Texas Crim. Rep., 70, 31 S. W., 649, in which Judge Davidson said: "As a ground of the motion for a new trial it is alleged that one Frank Austin would testify on another trial, if present, that the injured party made to him statements at variance with his testimony delivered on the trial. * * * Besides, the testimony is strictly and purely impeaching in its character and effect."

So in Driver v. State (Texas Crim. App.), 65 S. W., 528, 529, Judge Henderson observes, commenting on an effort to obtain a new trial upon the affidavit of Chandler setting up what a state witness had said to him after the main trial, as follows: "Of course, any statement that McWright may have made to Chandler would not be original testimony, and could only be used for the purpose of contradiction or impeachments. Motions for new trial should not be usually granted upon this ground. Holt v. State, 20 Texas App., 271; Barber v. State, 35 Texas Crim. Rep., 70, 31 S. W., 649."

So in Monroe v. State, 105 Texas Crim. Rep., 545, 289 S. W., 686, 687, with reference to affidavits setting up that state witnesses had made contradictory statements, we observed: "None of same would have been admissible as original testimony." Again in Bracken v. State, 110 Texas Crim. Rep., 536, 9 S. W. (2d) 356, 357, where a new trial was sought based on an affidavit that some days after the difficulty affiant heard the injured party make statements which, if true, would have materially contradicted his testimony as given on the trial, we said: "The effect of the testimony would have been to discredit and impeach the testimony of the injured party. It was not admissible as original testimony." In Alexander v. State, 84 Texas Crim. Rep., 185, 206 S. W., 362, opinion by Judge Morrow, it was observed that the newly discovered evidence consisted of statements and admissions of witnesses conflicting with their statements made on the trial. The action of the trial court in refusing a new trial was upheld. So in Harris v. State, 93 Texas Crim. Rep.,

551, 249 S. W., 485, where the affidavit contained statements of the injured party at variance with his testimony, the motion for new trial was held properly overruled; Judge Morrow writing for the court. Other cases are Martin v. State, 94 Texas Crim. Rep., 175, 249 S. W., 839; Esquivel v. State, 93 Texas Crim. Rep., 126, 246 S. W., 399; Patterson v. State, 85 Texas Crim. Rep., 644, 215 S. W., 308; Drennan v. State, 53 Texas Crim. Rep., 314, 109 S. W., 1090. However, the affidavits of said newly discovered witnesses all relate to the same conversation, and the oral testimony given by the affiants upon hearing the motion for new trial, makes doubtful whether there is real conflict or not.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Appellant contends that we were in error in holding that the testimony alleged to be newly discovered was purely impeaching in its character and effect and afforded no basis for a new trial. In his Annotated Penal Code, sec. 202, Mr. Branch states the rule as follows: "Newly discovered testimony which would not be admissible as original evidence, but which could only be used to discredit or impeach the testimony of a witness who has testified on the trial of the case, is not ordinarily ground for a new trial, and the discretion of the trial court in refusing a new trial sought to obtain such testimony will not be revised on appeal."

Many authorities are cited in support of the rule, among them being Gibbs v. State, 1 Texas App., 12; Grate v. State, 23 Texas App., 458, 5 S. W., 245; Harrolson v. State, 54 Texas Crim. Rep., 452, 113 S. W., 544; White v. State, 76 Texas Crim. Rep., 612, 177 S. W., 93, 95.

A different rule is applied when the newly discovered testimony, although tending to discredit or impeach a witness, is material and competent independent of its impeaching testimony. In such case, the fact that the testimony also impeaches a witness does not deprive the accused in a proper case of the right to a new trial. Jackson v. State, 18 Texas App., 586; Cockrell v. State, 60 Texas Crim. Rep., 124, 131 S. W., 221.

It has also been held in this state that newly discovered testimony as to the declarations of the alleged injured party contradictory of his material testimony given on the trial may be ground for a new trial if such declarations were part of the res gestae and therefore admissible as original evidence. Reed v. State, 27 Texas App., 317, 11 S. W., 372; Stewart v. State, 52 Texas Crim. Rep., 100, 105 S. W., 809.

Again this court has held that a new trial should be granted for newly discovered testimony which shows a conspiracy between the alleged injured party and another to bring about a conviction on manufactured and perjured testimony, although the new testimony is also impeaching.

Branch's Annotated Penal Code, sec. 202; Piper v. State, 57 Texas Crim. Rep., 605, 124 S. W., 661, 662.

A distinction has been drawn in the decisions between newly discovered testimony which could only impeach a witness who testified on the trial and newly discovered testimony showing that a witness was mistaken about matters material to the state's case. Branch's Annotated Penal Code, sec. 205; Heskew v. State, 14 Texas App., 606; Estrada v. State, 29 Texas App., 169, 15 S. W., 644; Johnson v. State, 61 Texas Crim. Rep., 605, 103 S. W., 893.

It appears that the cases cited in the original opinion support the proposition that the testimony alleged by appellant to be newly discovered could only have the effect to discredit and impeach the testimony of state's witness T. B. Kelley and was not admissible as original testimony. Most of the cases cited by appellant in his motion for rehearing appear to be rape cases in which it is shown that the prosecutrix alone testified to the main inculpatory fact. Illustrating the holding of the court in cases of the character last mentioned, we cite Lusty v. State, 97 Texas Crim. Rep., 167, 261 S. W., 775; Tull v. State (Texas Crim. App.), 55 S. W., 61; Foreman v. State, 61 Texas Crim. Rep., 56, 134 S. W., 229. In cases of rape and those of a kindred nature, this court has recognized its right to lay down exceptions to the rule that ordinarily a new trial will not be granted for newly discovered evidence which is wholly impeaching. Illustrating the view of the court, we quote from the language of Judge Lattimore in Duncan v. State, 96 Texas Crim. Rep., 433, 258 S. W., 182, 184, as follows: "While it is the rule ordinarily that a new trial will not be granted for newly discovered evidence which is wholly impeaching, we have never said or held that exceptions could not arise to this rule."

In an attempt to distinguish the present case from that of Bracken v. State, 110 Texas Crim. Rep., 536, 9 S. W. (2d) 356, appellant refers to the fact that in that case it is shown that more than one witness gave inculpatory evidence against the accused, whereas in the present case state's witness T. B. Kelley was the only person present except appellant and deceased. In Bracken's case, in reaching the conclusion that a new trial was properly denied, mention was not made of the fact that witnesses other than the one sought to be impeached testified to the main inculpatory facts.

We call attention to the case of Tate v. State, 66 Texas Crim. Rep., 198, 146 S. W., 169, 170, in which the appellant was convicted of robbery. As far as the opinion discloses the matter, the injured party was the only person who testified to the inculpatory facts and identified the appellant. It appears that a new trial was asked on the ground of newly discovered evidence which was to the effect that a witness would testify that the injured party stated to him that he (the injured party) was asleep at the time he was hit and robbed and did not see the man who robbed him. It

appears that on the trial of the case the injured party positively identified the appellant as the man who knocked him down and robbed him. In the course of the opinion it was said that the witness who was claimed to be newly discovered did not claim to know any fact connected with the case, but only stated facts in his affidavit as to declarations which tended to impeach the injured party. In concluding that the trial court was warranted in refusing a new trial, this court said:

"It has been held in a number of cases that newly discovered evidence would not authorize a new trial, if the purpose and effect of such evidence be merely to discredit or impeach a witness who has testified upon the trial. Barber v. State, 35 Texas Crim. Rep., 70, 31 S. W., 649; Butts v. State, 35 Texas Crim. Rep., 364, 33 S. W., 866; Franklin v. State, 34 Texas Crim. Rep., 203, 29 S. W., 1088; Grate v. State, 23 Texas App., 458, 5 S. W., 245; Atkins v. State, 11 Texas App., 8; Love v. State, 3 Texas App., 501; Gibbs v. State, 1 Texas App., 12; Fields v. State, 39 Texas Crim. Rep., 488, 46 S. W., 814."

We are constrained to the view that we were not in error in holding that a new trial was properly denied. In any event, the opinion is expressed that the trial court was warranted in concluding that if the alleged newly discovered testimony was before the jury it would not likely change the result. Branch's Annotated Penal Code, sec. 201; Hasselmeyer v. State, 6 Texas App., 21; Fleming v. State, 54 Texas Crim. Rep., 339, 114 S. W., 383; Johnson v. State, 61 Texas Crim. Rep., 104, 134 S. W., 225. On the trial of the case T. B. Kelley testified, in substance, that when the difficulty arose he got out of the car and ran into a field; that after appellant and deceased ceased scuffling, deceased got in the car; that as he (the witness) looked back appellant walked around on the right hand side of the car and shot; that he (the witness) saw deceased at the time the shot was fired, and it looked like he had his hands on the steering wheel; that at the time he was shot deceased was not trying to shoot or hit appellant; that deceased did not make any demonstration toward appellant; that when appellant walked around the car he saw the pistol in his hand, and saw him shoot deceased. Appellant testified on his direct-examination, in part, as follows: "Finally he (deceased) turned to me and looked at me and when he did I snatched the gun out of his hand and put it between my legs, and told T. B. to drive on. I seen he was going to get hold of the gun and the first chance I got I pushed him over and got on the outside. I said, 'Red (deceased) what do you mean by trying to take that gun away from me.' I said, 'Red you are too drunk to drive' and he said, 'No I am not.' I said, 'No, I ain't going to get close, I will tell you I will ride if you wont try to take the gun.' I just tucked the gun in my bosom and got close to him. He was sitting up on the steering wheel like that (indicating). He said, 'Give me that gun,' and I don't know

and I kind of got hung up that way and I heard the gun fire and I said, 'Red, Red' and Red didn't say nothing and I walked on the other side."

The witness further testified that at the time he called to T. B. Kelley saying to him that deceased was shot, but that Kelly said he was not coming back, and continued to run. On cross-examination, appellant identified the gun introduced in evidence, saying "That is the gun that I killed Raymond Hilliard (deceased) with." Following this statement, appellant said that he did not know who killed Hilliard. We quote, in part, from appellant's cross-examination as follows: "When I heard a gun fire I was in the car. I don't know where T. B. Kelley was at that time. At the time he was killed I had a pistol in my possession. If T. B. Kelley killed him he didn't kill him with the gun I had. Whatever gun I had T. B. Kelley didn't kill him with that gun. When the shot was fired Raymond Hilliard and I were scuffling over the gun. I don't know where T. B. Kelley was, I don't remember whether he left the car some fifteen or twenty seconds before or not. I had my eyes on the gun and on Raymond Hillard's hand. * * * I couldn't tell you how I was holding this gun at the time I heard a shot fire. It was in my possession and when he (deceased) made a grab at a jump, he grabbed it out and we both grabbed for the gun. I don't know what. I don't know what he done, it was all done so quick I could not tell you. I know where Raymond Hilliard was shot. * * * I didn't see T. B. Kelley with any gun. I didn't see him pull a gun or try to pull any. I don't know whether he had a gun or not. I never shot Raymond Hilliard, we were not scuffling over a gun. I couldn't tell you how far T. B. Kelley was at the time this shot was fired. After I got out of the car and walked around he looked to be about thirty yards away from the car. It looked like he was about thirty yards out in the field. He never did come back to that car. I don't know whether T. B. Kelley killed him or not. I don't know whether this gun was fired while Hilliard and I were scuffling or not. I couldn't tell you how I was holding the gun."

On the hearing of the motion for new trial the first witness, Mr. Turner, who was alleged to be newly discovered, testified that he talked to the witness T. B. Kelley at the time of the former trial of appellant. He said that he asked Kelley this question: "I understand that you was up in the field and did not see the shooting." He testified that Kelley answered "I was." This witness said, further, that M. E. Walker and his son were present when this conversation was had. He said that after Kelley made the reply to which reference has been made he left and had no opportunity to hear anything else the witness said. Mr. Walker, another of the alleged newly discovered witnesses, testified that Kelley stated to the witness Turner in his presence: "When I heard the shot I turned

and seen the smoke and Robert was standing by the car with the gun in his hand." The witness testified further: "That was principally the conversation. Also before that part of it he told about the gun, and how it started; that they were scuffling over the gun; when he got out of the car they were scuffling over the gun and he ran out across the field. He said he went running out across the field, and that when the gun was fired, he stopped and looked back and that Robert Hale was standing by the car with the gun, and that he saw the smoke. He said he supposed Hilliard was shot. He slumped down over the wheel. * * * He did not say he had stopped and was looking at the time the shot was fired. He didn't stop until he heard the shot. * * * The answer that T. B. Kelley made with reference to the shooting was made in answer to a question propounded by Mr. Curtis Turner." The son of the last-mentioned witness testified on the motion that T. B. Kelley in the same conversation stated to him, his father, and Mr. Turner that he was up in the corn field when he heard a gun fire, and, looking back, saw smoke and saw appellant standing by the car. This witness said that Kelley did not say whether he saw a gun or not. Further, he said that Kelley did not say whether there was any one sitting in the car at the time of the shooting.

It is apparent that the alleged newly discovered witnesses did not have the same understanding of the declaration made to them by Kelley. Although, according to their testimony, this declaration was made to all of them together and on one occasion, they gave different versions as to what Kelley said. As heretofore shown, one of the witnesses testified that Kelley said that when he looked back he saw appellant standing by the car with a gun in his hand, and that deceased was in the car slumped over the steering wheel. Another witness declared that Kelley did not say whether appellant had a gun, and made no mention of any one being in the automobile. Mr. Turner merely stated that, in answer to the question, "I understand that you was up in the field and did not see the shooting." Kelley replied, "I was." The answer was susceptible of the construction that Kelley meant to say that he was in the corn field. It did not necessarily show that Kelley stated that he did not see the shooting. It appears to have been undisputed that Kelley was in the corn field at the time the shot was fired. Appellant himself admitted this fact. Considering, in connection with Kelley's testimony on the trial and the other facts and circumstances in evidence, the conflicts in the testimony of the witness as to the statement made to them by Kelley, we are unable to reach the conclusion that the trial court was not warranted in overruling the motion for new trial on the ground that the alleged newly discovered testimony would not likely change the result.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.