RICHARD SMITH V. THE STATE.

No. 15487.   Delivered December 21, 1932.
Rehearing Denied February 22, 1933.
Reported in 57 S. W. (2d) 105.

The opinion states the case.

*Moore & Wilson,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is robbery; the punishment, confinement in the penitentiary for seven years.

Originally appellant, George Fox, and Nona Fox were tried jointly and convicted, appellant and George Fox receiving a penalty of 25 years each, and Nona Fox a penalty of 20 years. The judgment of conviction was reversed by this court because of the denial of appellants' first application for continuance. Fox et al. v. State, 43 S. W. (2d) 951. On the present trial a severance was granted.

. The testimony on the part of the state was substantially the same as that adduced on the former trial. On the present trial, James McVeigh, the injured party, was not present. A proper predicate having been laid, his testimony was reproduced. No question is presented by the record as to the suffi-

ciency of the predicate to authorize the reading of such testimony by the court reporter.

The state's testimony was, in substance, as follows: James McVeigh, a discharged sailor, had gone from San Francisco to Amarillo, wearing his sailor's uniform. He was standing on a street corner near a bus station when he was approached by George Fox, who engaged him in conversation. Upon McVeigh advising Fox that he would probably remain in Amarillo for a time, Fox recommended that he stop at the Verdun Hotel. McVeigh then crossed the street to a restaurant and ordered something to eat. While he was eating, Nona Fox, who was the wife of George Fox, entered the restaurant and ordered a cup of coffee. She and McVeigh engaged in a conversation. She advised McVeigh that she knew where some liquor could probably be obtained. She and McVeigh left the restaurant together and walked down a street to a house. Upon entering a room in the house, they found appellant in the room on the bed. Nona Fox advised appellant that they wanted some beer. McVeigh told the parties he had just gotten into town, and showed them his pocketbook, his money and ticket. He had approximately seventy-three dollars in his purse. Appellant left the room for a moment, leaving McVeigh with Nona Fox. While McVeigh was facing Nona Fox, appellant came up behind him, placed a pistol to his back and ordered him not to move. Appellant then directed Nona Fox to take McVeigh's money. About the time Nona Fox was taking the money, George Fox entered the room and said: "Well. I see you got the b—d." After appellant and his companions had taken McVeigh's money, Nona Fox marched him down the street, holding a pistol in her coat pocket. After she left him, McVeigh saw George Fox and Nona Fox leaving in a Ford car, and he took the number. He reported the matter to the officers, who several hours thereafter arrested appellant, George Fox and Nona Fox. When appellant was arrested he had some currency in his shoe, among the bills found being a ten dollar gold certificate. The parties had taken a ten dollar gold certificate from McVeigh, as well as the balance of his money. No pistol was found in appellant's room. No weapons of any character were found in the possession of George and Nona Fox when they were arrested. McVeigh's purse was not found in the possession of any of the parties. A witness for the state testified that she was near the room during the time that McVeigh was with George and Nona Fox. She said she heard some man in the room say "Don't move." Also she testified.

that she saw McVeigh leave the house with Nona Fox. She was unable to identify appellant.

Appellant did not testify in his own behalf, and introduced only one witness. This witness testified that he had George Fox's automobile in his garage shortly before his arrest. He said that there was no gun in the car that he knew anything about. Further, he said he probably would have seen the gun had there been one in the car.

In his opening argument the district attorney used language as follows: "This witness James McVeigh does not live here and can't be here." The objections interposed by appellant at the time the argument was made raise the question as to whether the statement of the district attorney injected into the case a new fact harmful to appellant. As already noted, the predicate for the reproduction of the testimony of the witness McVeigh was laid in the absence of the jury. Nevertheless, the jury knew that McVeigh was absent. Furthermore, they learned from the testimony that McVeigh, at the time of the former trial, did not live in the state of Texas, and that, on the occasion of the alleged offense, he was passing through Amarillo on his way to the state of his residence. The statement of the district attorney to the effect that the witness would not be present embraced the only new matter called to the attenion of the jury. It is appellant's position that the jury might have regarded the unexplained absence of the prosecuting witness as due to a desire on his part to remove himself from the jurisdiction of the court after presenting under oath a story probably not true. Stated in another way, appellant contends that, if the district attorney had not told the jury that the witness could not be present, the conclusion might have been reached that the witness was afraid to face the jury because of the fact that his testimony was false. Under the circumstances reflected by the record, the opinion is expressed that we would not be warranted in reaching the conclusion that the statement in question was material. The testomony of the witness was uncontroverted. Notwithstanding appellant contends that the version of McVeigh might be deemed unreasonable, he admits that the evidence is sufficient to support the conviction. We are unable to reach the conclusion that the state's version of the transaction is not reasonable. There is nothing in the record tending to discredit the testimony of the witness. To hold that his absence would probably have impressed the jury with the view that the witness had given perjured testimony would, under the circumstances revealed by the record, require us to indulge in speculation to a degree not deemed warranted.

In his motion for new trial, appellant alleged newly discovered evidence and appended to the motion the affidavit of W. L. Scott, the witness alleged to be newly discovered, as well as the affidavit of his attorney. The affidavit of the witness is to the effect that during the latter part of March, 1931, he was working in the Star Cafe in Amarillo; that sometime during the latter part of March a man dressed in a sailor's uniform came into his place of business in the evening about nine o'clock and asked for something to eat; that this man stated that he did not have any money to pay for his meal because some "card sharks," consisting of two men and one woman, had just "flimflammed" him out of his money; that the woman had gotten him down to the place; that the woman and one of the men had seemed to use the name of Fox; that he had the officers looking for these parties; that the man making this statement to him had a "Scottish-sounding" name beginning with "Mc" and his name could have been McVeigh, although he did not have any recollection of it; that, after reading of the first trial in which George Fox, Nona Fox, and appellant Richard Smith were tried for robbery, he realized that the man he had talked to was in all probability the prosecuting witness; that he did not want to get mixed up in the matter, and did not tell what he knew to appellant or either of his attorneys; that since reading of the second trial of appellant he discussed the case with a man who suggested that he ought to tell the attorneys; that the attorneys called on him and he told them what he knew and agreed to make the affidavit; that he was not personally acquainted with appellant or his co-defendants; that he was not able to give any definite description of the party who had talked to him in his restaurant, except that he was a man about average size and height, weighing about 150 or 160 pounds; that this man told him he had been discharged from the United States Navy at some point in California and was only temporarily in Amarillo; that he believed he would recognize the man who talked to him if he saw him again. In qualifying the bill of exception the trial court made, in substance, the following statement: The court heard evidence upon the motion for new trial and the witness Scott testified in open court. The witness did not sufficiently identify the man he was talking to as being James McVeigh, the injured party. He testified that a sailor came to his restaurant between the 15th and 25th of March, between 8 and 9 o'clock p. m. to get something to eat and said that the reason he did not have any money to buy something to eat was that he had lost his money in a card game. Further, he testified that

this sailor stated that he "got to matching his money in the bus station and lost his money." The witness repeated that the sailor had stated that he had lost his money in the bus station. Further, he testified that the sailor said his nickname was "Mack." At this point, we quote from the qualification of the court as follows:

"This testimony, that the sailor repeatedly stated that he 'got to matching money in the bus station' etc., is so different from the testimony of James McVeigh, as will appear from the statement of facts, as to show, clearly, that the man Scott was talking to was not McVeigh or else, if he was, he was talking about an altogether different transaction than that involved in this case, for neither McVeigh nor any witness for either of the defendants in these cases ever testified that there was any game of matching or anything of the kind at the bus station. * * * The witnesses McNeilus and Lewis, the officers who investigated the case and arrested the defendants, testified, in effect, that from the time McVeigh reported the matter to them (which was immediately after it happened) he was in their company continuously, all that night, and with Mr. Lewis every night thereafter up to and during the time and after the trial, so that it was altogether improbable that he could have been the man that Scott claims to have talked to at the restaurant, if said officers were telling the truth, and they were neither impeached nor contradicted."

We deem it unnecessary to determine whether the testimony alleged to be newly discovered was merely impeaching. See Hale v. State, 51 S. W. (2d) 611. In any event, the opinion is expressed that the trial court was warranted in concluding that, if the alleged newly discovered evidence was before the jury, it would not likely change the result. Hale v. State, supra, and authorities cited. In his qualification to the bill of exception, the court shows that the testimony given by the witness on the motion for new trial wholly failed to identify the witness McVeigh. Moreover, the court states that the witness alleged to be newly discovered testified in one instance that the party he was talking to told him he had lost his money in a bus station, and at another place in his testimony said that such party declared that he had lost his money in a game of cards in a house. Again, in the qualification, attention is called to the testimony of the officers to the effect that shortly after the robbery the injured party was in their company and remained with them continuously all that night and with one of the officers every night thereafter "up to and during the time and after the trial." Considering the testimony adduced

upon the trial in connection with the court's qualification to the bill of exception, we are unable to reach the conclusion that the trial court was not warranted in overruling the motion for new trial on the ground that the alleged newly discovered testimony would not likely change the result.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In view of the testimony introduced by the state showing the nonresidence of the witness McVeigh, we are not able to agree with appellant that the argument of the state's attorney relative to McVeigh not being a resident and not living in Amarillo, injected a new element into the case.

Neither do we think when all parts of paragraph three of the court's charge are considered, that it is open to the criticism contained in the exception taken thereto. We do not think it a necessary fact inference from the language of said charge that appellant was present at the time of the alleged robbery.

The motion for rehearing will be overruled.

*Overruled.*