# C. R. Stout v. The State.

No. 21694. Delivered October 29, 1941.

The opinion states the case.

*John Morse* and *Rush H. Record*, both of Wichita Falls, for appellant.

*Spurgeon E. Bell*, State's Attorney of Austin, for the State.

HAWKINS, Presiding Judge.

The indictment charged appellant with burglary of a house occupied and controlled by Stella Lea, on or about January 27, 1941, and further charged that appellant had theretofore been twice convicted of felony offenses, thereby seeking application of Art. 63 P. C. against appellant as an habitual criminal. Appellant was convicted and his punishment assessed at life imprisonment in the penitentiary.

Appellant sought to quash the indictment on five grounds. The first and second grounds are clearly untenable, and require no discussion. The third ground urged was that the indictment contained no allegation that the prior convictions were for like offenses as the one presently charged. Appellant has apparently confused Articles 62 and 63 of the Penal Code. The State was not seeking an increased penalty because of a previous conviction for an offense of the "same nature," as permitted under said Article 62, but was proceeding under Art. 63—in which case it is not essential that the prior convictions be for "like" offenses. There need only be two previous convictions for felonies less than capital. Belton v. State, 130 Tex. Cr. R. 7, 91 S. W. (2d) 728; Arnold v. State, 127 Tex. Cr. R. 89, 74 S. W. (2d) 997.

The fourth ground upon which appellant based his motion to quash the indictment was that there was no allegation that the prior convictions alleged were for "separate offenses." It is not necessary that the indictment contain an averment in the language quoted, if the language employed does show prior convictions for separate and distinct felonies. There is no uncertainty in the present indictment upon the point mentioned. After sufficiently and properly alleging the present offense, the burglary of Stella Lea's house on or about January 27th, 1941, the indictment proceeds as follows:

"* * * An the Grand Jurors aforesaid do further present that prior to the commission of the aforesaid offense by the said C. R. Stout, hereinbefore alleged, the said C. R. Stout was two times duly and legally convicted of a felony less than capital, as follows, to-wit: On the 31st day of January, A. D. 1935, in the District Court of Wichita County, Texas, in a case numbered upon the docket of said court, Number 6171, and entitled the State of Texas v. C. R. Stout, the said C. R. Stout under the name of C. R. Stout, was duly and legally convicted in the last named court of a felony as aforesaid, to-wit: the felony of burglary; and on the 28th day of November, 1931, in the District Court of Wichita County, Texas, in a case numbered upon the docket of said court, Number 5359, and entitled the State of Texas v. C. R. Stout, the said C. R. Stout under the name of C. R. Stout, was duly and legally convicted in the last named court of a felony, as aforesaid, to-wit, the felony of burglary, which conviction occurred, and the judgment thereon became final, prior to the commission of the offense for which the said C. R. Stout, under the name of C. R. Stout, was convicted in cause Numbered 6171 in the District Court of Wichita County, Texas, as aforesaid; and the said convictions in cause Numbered 6171 in the District Court of Wichita County, Texas, and in cause Numbered 5359 in the District Court of Wichita County, Texas, occurred, and the judgments thereon became final, prior to the commission of the offense hereinbefore alleged in and by this indictment, * * *"

It is alleged that the conviction in No. 5359 occurred and the judgment became final before the commission of the offense charged in No. 6171, and that the convictions in both of said numbered cases occurred and became final before the commission of the offense presently charged. If this be true the former convictions were of necessity separate felonies.

The fifth ground of the motion to quash was because the indictment failed to charge whether the present burglary was committed in the daytime or at night. The indictment alleges that appellant by force, threats and 'fraud broke and entered the house with the intent to commit the crime of theft. Such averment will sustain a conviction for either daytime or night-time burglary, according to the proof. See Branch's Ann. Tex. P. C., Sec. 2327, and authorities there cited. Strickland v. State, 115 Tex. Cr. R. 410, 28 S. W. (2d) 818.

Before considering other complaints brought forward by bills of exception it may be well to state briefly the facts. Officers patrolling the streets of Wichita Falls on the night of January 27, 1941, observed that the lock on the door of the burglarized house had been broken. Upon entering the house, which was a cafe, they found a tow-sack leaning against the wall, the sack containing various articles which were kept for sale in the cafe. The officers by the use of their flash lights found appellant hiding beside a refrigerator. When the light was flashed on him, he said, "Don't shoot. I am harmless; you have got me cold turkey this time." The officers arrested appellant and called other officers, who took appellant and the sack to the police station. Proper evidence was presented by the State showing the former convictions of appellant for burglary, as alleged in the indictment.

Objection was urged to the State placing in evidence the above quoted statement of appellant, on the ground that it was hearsay, and also that it was a confession not made in compliance with the statute. The statement was res gestae, and not subject to either objection. Goforth v. State, 100 Tex. Cr. R. 442, 273 S. W. 845; Jones v. State, 106 Tex. Cr. R. 633, 294 S. W. 562, and cases therein cited.

Appellant defended on the ground of insanity, or temporary insanity at the time of the burglary. Bill of exception number three reflects the following incident. Jess Leverett was one of the officers to whom appellant was turned over by the arresting officer. Leverett was called as a witness by appellant, and testified on direct examination that when the officers took appellant to the police station he was placed in what they called the "drunk" cell. On cross examination by the State the witness testified that appellant was not drunk on the occasion in question, but assigned other reasons why appellant was placed in such cell. After proving by Leverett that he had known appellant

for six years, and that when he arrived at the burglarized house in response to a call from the arresting officers he heard appellant talking, and after taking him to the police station he (Leverett) talked to appellant about the burglary, and had talked to appellant on other occasions and heard him talk. Leverett then testified that from what appellant said at the time, and knowing him as witness did, that witness did not think appellant was crazy; that on the way to the police station or after reaching there appellant said nothing which would indicate that he did not know what was going on, but that he answered questions and talked intelligently. Leverett was then asked by the attorney for the State if in his (witness') opinion, knowing appellant as he did, appellant knew right from wrong at the time appellant was turned over to witness at the cafe. Witness answered, "Yes, sir, I think he did," and added, "He did not do or say anything to indicate to me that he didn't know right from wrong." Appellant objected to the witness expressing his opinion as indicated, on the ground that it called for a conclusion of the witness upon the issue of fact before the jury, and usurped the jury's province to determine that very issue. Our investigation of the question has been most interesting. The cases of Carr v. State, 7 S. W. 328 and Hale v. State, 121 Tex. Cr. R. 364, 51 S. W. (2d) 611, appear to support the action of the lower court in admitting the evidence. Appellant cites Brown v. Mitchell, 88 Texas 350, 31 S. W. 621, Pickering v. Harris, 23 S. W. (2d) 316, as containing a contrary holding. The civil cases are upon the point of whether a witness may give his opinion on the mental capacity of a party to execute a binding deed or will. The courts of other jurisdictions are not in harmony on the question before us. Mr. Wigmore, 3d Ed. page 93, Sub-division 2 of Section 1958 says:

"The capacity of an accused person to be legally responsible for the crime charged depends also upon a legal definition; and it would therefore be equallly improper to ask for the witness' testimony without first eliminating the element of law from the question. But an inquiry whether he knew the difference between right and wrong, or whether his will could control his actions, would be proper."

In the note under said section cases from different states are cited as either in accord with or contrary to the text. In our own State it is not questioned but that a non-expert witness, when qualified to do so, may express his opinion as to the sanity or insanity of accused. It is further definitely settled in

our own State if a person does not know the difference between the right and wrong of the particular act charged against him he is in legal contemplation insane; if he does know the difference he is sane and answerable for his acts. With these principles in mind the reasoning and conclusion of the court in Banks v. Commonwealth, 145 Ky. 800, 141 S. W. 380, appears sound. As in Texas, so in Kentucky, a qualified non-expert witness may express his opinion upon the question of the soundness or unsoundness of accused's mind. After making such observation, the Kentucky court said:

"* * * But, conceding this, let us see if this character of opinion evidence is competent when the witness is called on to express an opinion as to whether the accused had mind sufficient to know right from wrong. Without dealing in the refined or confusing distinctions of which the subject is capable, but treating it as a practical question in the administration of the criminal law, we are unable to make any distinction between the legal effect that should be attached to the competency of a question involving the soundness of mind of the accused and a question involving his capacity to know right from wrong. If a person is of sound mind, as soundness of mind is commonly understood by nonexpert witnesses, then he is capable of distinguishing between right and wrong, and should be held accountable for his acts. On the other hand, if he is of unsound mind, he should not be held legally responsible for what he does. Therefore, when a nonexpert witness is allowed to express an opinion that the accused is of sound mind, there seems no reason why he should not also be permitted to express an opinion that he knows right from wrong. One opinion does not require more knowledge than the other, nor is one more than the other a usurpation of the functions of the jury. The reasons that would justify the admission of this evidence in the one instance justify it in the other; and the practice that would reject one opinion would reject the other. * * *"

It follows from what has been said that we do not regard the action of the court in admitting the evidence complained of as calling for a reversal.

We observe in passing that appellant seems to have injected the issue as to his knowledge of right and wrong by asking his own witnesses their opinions regarding that matter when they were testifying on the issue raised by his insanity plea.

By bill of exception number four appellant complains that the State asked the witness Alice Stout if she recalled when

appellant was in the reformatory in Colorado, and if she knew when he went to the penitentiary in 1935. Proper evidence was before the jury in regard to the former felony convictions of appellant, and therefore, the inquiry about appellant being in the penitentiary in 1935 was harmless. In regard to the inquiry about appellant having been in the reformatory in Colorado we observe that the State in developing its case made no mention of the reformatory incident, but that fact came into the case upon direct examination of one of appellant's own witnesses, hence no new fact went to the jury through the question objected to, and the answer thereto. No error appears from bill of exception number four.

Bills of exception numbers five, six and seven are not briefed by appellant, but there being no waiver thereof we have examined them carefully, and find no merit in the complaints brought forward in said bills.

Finding no reversible errors in the record, the judgment is affirmed.