## ROBERT THORNTON WALTHALL v. THE STATE.

No. 22281. Delivered October 21, 1942.

The opinion states the case.

*H. T. Cooper, H. D. Payne,* and *R. H. Bishop,* all of Fort Worth, for appellant.

*Marvin H. Brown, Jr.,* Criminal District Attorney and *M. Hendricks Brown,* Assistant Criminal District Attorney, both of Fort Worth, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction for murder with a penalty of twenty years in the penitentiary.

On the 30th day of November, 1941, appellant, who had been disabled from an injury for quite a while, was engaged in work at a wrecking yard until about 2:30 in the afternoon. He returned to his home at this time to have lunch with his wife, in accordance with previous arrangement, but failed to find her there. A short while thereafter she joined him at a beer and sandwich place where they also visited for some time with another couple and all engaged extensively in drinking beer and whiskey. Later in the afternoon, or early evening, appellant was assaulted by a man and woman in his front yard who beat him up to some extent. His wife went to his rescue and they both retreated into their apartment. A neighbor who

lived in the upstairs apartment came to their assistance and testified that appellant, in some kind of fit of anger, secured a butcher knife and a case knife which he displayed in her presence, but meager details are given as to what was said or done at that time or thereafter. While the neighbor was returning to her apartment she heard noises that attracted her attention and upon investigation found that the wife of appellant had been stabbed in the bowels. Officers happened by at that time to investigate a report of an attempted burglary in the vicinity and found appellant leaning against his door and heard the groans of the wife inside. This led to the calling of an ambulance for the wife and the arrest of the appellant. A few days thereafter she died in a hospital.

In his brief appellant says that, "his defense was that of temporary insanity produced by the over-indulgence and excessive use of intoxicating liquor, together with the severe beating which he received and the injuries to his head caused by stomping and kicking him shortly before the commission of the offense." There is no issue of self defense in the case. This will be an important fact in discussiong the question raised by bills of exception numbers two and three. It will also be observed in connection herewith that appellant took the stand in his own behalf and declared that he knew nothing of the stabbing and had no recollection of anything that occurred after he engaged himself in drinking until he found himself in jail. We find no proof of the extent of the injuries which he received and no indication that they were sufficient to play an important part in his mental incapacity, if such it was, at the time he inflicted the mortal wound.

Bill of Exception No. Four complains of the action of the court in permitting the officer who arrested appellant to testify that, in his opinion, appellant was of sound mind at the time of the arrest which was immediately after the stabbing. A number of cases are cited holding that before a layman may testify that a party is insane he must give some acts, omission or peculiarity, upon which the opinion is formed. This will be conceded, but it does not follow that in order to testify that a party is of sound mind he must base his conclusion upon the same things, for ordinarily people of sound mind would not, in the normal course of conduct, present any pecularities, be chargeable with any omissions, or have characteristic acts of sanity. Appellant cites the case of Newchurch v. State, 121

S. W. 998, and particularly refers to the opinion on motion for rehearing by Judge Hawkins. As we interpret that opinion it sustains us in the conclusion that while a predicate must be laid for testimony by a layman that a party is of unsound mind, no such predicate is required to make admissible his conclusion that a party is of sound mind. (See Underhill on Crim. Evidence, 3rd Ed. Sec. 264, together with many authorities cited at page 1001 in the opinion referred to.) However, in the instant case the witness had custody of appellant, talked with him, asked questions and amply disclosed an opportunity to form an opinion, which is essential even though he is not called upon to detail it as a predicate for his conclusion.

Bills of exception numbers two and three complain of the action of the court in excluding the testimony of the mother and sister of the deceased as to statements made by deceased while in the hospital and after the shooting. Several of the statements sought to be admitted clearly do not come within the rule admitting dying declarations. The mother would have testified that deceased stated to her that she was to blame for the difficulty in which the stabbing occurred and that she did not want the defendant prosecuted. The court's qualification to this bill quotes the evidence thus: "She said she was to blame, too."

Bill number three, as qualified by the court, is to the effect that the sister would have testified that the deceased said, "Please don't blame Bob; I was as much to blame as he was—you know he had been sick for so long and didn't have a job. He felt like the world was down on him—I aggravated him." This same witness, upon further examination, quoted the deceased as saying during this same period of time, "I can't understand why Bob did it. I just don't understand it—I can't remember him doing it." The witness further said that deceased did not at any time know how she got hurt, probably never at any time remembered the details.

While there is difficulty in determining, at times, whether the statement offered is a conclusion or a shorthand rendition of fact, it is perfectly clear that the declaration is admissible only if and when it points directly to the facts constituting the res gestae of the homicide, that is to say, to the act of killing and to the circumstances immediately connected therewith. (Underhill on Crim. Evidence, 2nd Ed. p. 202; Wake-

field v. State, 50 Tex. Crim. Rep. 124; 94 S. W. 1046; Words & Phrases, Permanent Ed. Vol. 13, p. 753; Medina v. State, 63 S. W. 331; Roberts v. State, 5 Tex. 141; Warren v. State, 9 Tex. App. 619; 35 Am. Rep. 745). Mr. Underhill says, also, that the court may determine the admissibility of a dying declaration upon all of the facts of the case. If we look to all the testimony offered in the case before us it does not appear that they related to the specific act of the homicide, but it is definite that they referred to his previous physical trouble, his disappointment, and resulting state of mind. When she said that she was as much to blame as he was she had reference to the history of the case leading up to the stabbing, if the record presented reflects the true facts. Under this construction the statement that she had influenced him in any way or was to blame appears to be a conclusion of hers rather than a short-hand rendition of what she did at the particular time. It would convey to the jury no idea whatsoever of any part which the deceased played in the particular transaction. Even if it is to be so construed, counsel concedes in his brief that the only defense was temporary insanity. Appellant himself testified that he became entirely unconscious while drinking whiskey and beer with his wife at the restaurant; that he knew nothing of the attack made on him; that he had no knowledge of having inflicted the wound on his wife or of anything else that occurred until he came to himself in prison. Considered in the light of this statement she, in all probability, attached some blame to herself for engaging with him in drinking, as the evidence shows she did.

The penalty in the case is a severe one, viewed from the standpoint of the appellant's contention that he was temporarily insane, but when we consider that the jury was justified under the facts of the case in concluding that his mental condition was superinduced by his own voluntary act, a different impression is created. The jury met its responsibility in the matter according to its own judgment and this court is without power under the facts of the case to say that they were not justified in the verdict which they rendered.

The judgment of the trial court is affirmed.