## TOM RANDOLPH GRIFFIN V. STATE.

No. 24582. January 11, 1950.
Rehearing Denied February 22, 1950.

W. W. *Tupper* and *William C. McDonald,* San Angelo, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a conviction for rape by assault; the punishment confinement in the penitentiary for life.

The state's testimony shows that prosecutrix, an eleven-year-old school girl, was standing on a street corner waiting for a bus. Appellant drove up in his automobile and asked her if she wanted to ride. She accepted, and got into the car. Then he drove into the country, and raped her by force.

Appellant did not testify. The defense of insanity was presented by the testimony of lay witnesses.

Appellant contends that his insanity was so overwhelmingly established that the jury were not authorized to reject same, especially in view of the fact that the state offered no testimony contradictory thereof.

While it may be true that the appellant presented a strong case of insanity, this was, nevertheless, a question of fact primarily for the jury and we would not be authorized to reject the finding, especially in view of the legal presumption that all persons are sane.

It is also contended that the facts fail to reflect the state proved that prosecutrix was not the wife of appellant. To this contention we cannot agree. We note that prosecutrix testified that she never saw the appellant prior to the time he accosted her on the street, that he was a complete stranger to her, and that she was "not married to that man." This was sufficient to authorize the jury to find that she was not the wife of appellant.

The charging part of the indictment reads as follows:

". . . . did, then and there unlawfully in and upon Jessica Nell Paris, a female then and there under the age of fifteen years, make an *assult*, and the said Tom Randolph Griffin did then and there ravish and have carnal knowledge of the said Jessica Nell Paris, the said Jessica Nell Paris not being then and there the wife of the said Tom Randolph Griffin. . . ."

It is contended that the use of "assult" rather than the word "assault" rendered the indictment fatally defective.

Under the provisions of Art. 1183, P. C. C., the carnal knowledge of a female under the age of eighteen years other than the wife of the accused, with or without her consent and with or without the use of force, threats, or fraud, is rape.

The instant indictment alleged the constituent elements of that offense. It was therefore sufficient, and the use of the term "assult"—whether intended for the word "assault" or not—could be rejected as surplusage, an allegation that an assault was made upon the prosecutrix being unnecessary in addition to the other allegations of the indictment.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant now alleges that because the state offered no controverting evidence relative to his insanity, that the verdict of the jury finding him sane is not sustained by the evidence, and that he was entitled to a verdict of an acquittal because of insanity. He cites us to the case of Fisher v. State, 30 Tex. App. 502, 18 S. W. 90, which merely holds that the burden of establishing insanity by a preponderance of the evidence is upon the accused. With this doctrine we agree, as is also declared in Roberts v. State, 67 Tex. Cr. R. 580, 150 S. W. 627. We also find the case of Gardner v. State, 85 Tex. Cr. R. 103, 210 S. W. 694, which makes the statement that where the testimony of many witnesses showing insanity is not controverted a conviction of sanity cannot stand.

There is testimony herein showing insanity to have been in members of the family of appellant's father, as well as in his own sister's family, and their families; and there is also testimony showing peculiar moods and a certain moroseness of appellant at certain times, but no mention is ever made of his present lack of a knowledge of the right and wrong of an act and the probable consequences thereof. There is evidence that appellant was subject to certain spells, and that he would go off by himself and avoid association with others and acted peculiarly. The testimony seems to show him possessed of such knowledge of the right and wrong of the particular act and the probable consequences thereof. Of course, the jury saw him and observed his actions at the trial; and they heard a witness testify that on the day of this occurrence, the appellant appeared at a certain store and purchased a new suit of clothes, and contrary to the usual custom, he took off his old clothes and put on his new suit at the store and had the old one wrapped up and took the same away. Upon an examination of the old suit, it was found to be stained with blood of the same type as that of the little girl and containing certain cells that could have come from the body of a girl her age. We think the jury could have used such in convincing themselves that he was endeavoring to dispose of certain evidence relative to a penetration of this child's body. This evidence can be said to combat that of appellant's family history and the testimony of his relatives as to his moods at certain times, and also to show that

he was not in such moods when with the little girl. A typical insanity witness was appellant's brother, who testified that "his mind comes and goes; he is not a flat idiot all the time but his mind comes and goes." Appellant's sister testified:

"His condition goes and comes; at times I think he is smart and at times I don't think he knows anything, and during these periods I don't think he knows the difference between right and wrong."

On cross-examination she testified:

"He has been working in a carbon black plant and was working in the carbon black plant at Big Lake when he committed the offense; he has been married twice."

No witness testified relative to appellant's mental condition at the time of or near to the date of the offense; and we are still of the opinion that the testimony, together with the legal presumption of sanity, justified the jury in their verdict of sanity.

Therefore, the motion for a rehearing will be overruled.