EMMA LUCILLE WENCK V. STATE.

No. 25,010. February 14, 1951.
Rehearing Denied May 2, 1951.

Hon. W. S. Barron, Judge Presiding.

*Ben L. Parten,* and *Frank A. Woods,* Franklin, for appellant.

*Bill Palmos,* County Attorney, Franklin, *Taylor & Dickens,* Marlin, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for murder, the jury having assessed the punishment at 30 years in the penitentiary.

N. L. Miller, the deceased, was Chief of Police of the city of Hearne.

Accompanied by Officer Knox Tidwell, the deceased went to the home of T. A. Luster near the outskirts of the city of Hearne in answer to a report of a disturbance there.

Shortly after the officers arrived, deceased was killed as a result of a shotgun loaded with buckshot being fired through a window of the house.

Soon Sheriff Reeves and others arrived, and shortly thereafter a second shot was fired from the house, and appellant was seen to come out of the house and onto the porch with a single barrel shotgun in her hands.

After the officers had fired warning shots, she finally put the gun down and came to the fence where she was handcuffed.

Sheriff Reeves testified:

"She made a statement to me right after I took her and right after she came out of the house. She said she was mad and she was sorry it happened and it would not have happened if she was not mad at Mr. Luster. She said she asked him for $1.00 to have her hair fixed and he would not give it to her and Mr. Luster told her he was going to call officer, and she would shoot any one that come up and she was mad."

The written confession of appellant was also introduced by the state reading in part as follows:

"My name is Lucille Broack Wenck, and I live at 801 E. Bradford Street in Hearne, Robertson County, Texas. I am 21 years of age, having become 21 on the 4th day of July of this year, 1949. I am not married at this time, having gotten a divorce in about October of 1948. This afternoon, on the 6th day of October, 1949, I had a fush with Mr. Tom Luster, who I keep house for. I have a 32 caliber pistol and Mr. Luster hid the pistol. He would not tell me where it was and I got mad. I also wanted a Dollar to get my hair set and he would not give me the dollar. Later I decided to make a cake and went down to a

small store that Mr. Miller owns and got some eggs and butter. I went out in yard later to chop some wood and a piece hit me in the head and put a knot on my head. Mr. Luster came outside and I had broken the radio aerial and he fixed it. I went in the house and when he came in the chouse I asked him for the pistol and he wouldn't give it to me. I told him that he would be sorry. He said that he was going to call the law. I looked for the pistol and couldn't find it. I found a lock box that belonged to Mr. Luster and I thought that the pistol might be in it. I tried to open the box with a bobby pin, but couldn't get it open. I had the shot gun, which was a single shot 12 gauge shot gun, lying in a chair. When a car drove up in front of the house I ran to the chair and pick up the gun. I already had gone into Mr. Lustter's room and got 5 shot gun shells out of the table drawer. These were Buckshot. I had them in my dress pocket. When the car drove up in front I picked up the gun and loaded it with one of the shells. I knew it was the police car when it drove up. I saw one officer get out of the car and walk up to the front porch. He then turned around and went back to the car. I then went into the front bed room *on* the house, which is my bed room and is on the west side of the house, facing the street where  the police car was parked. There was — bed next to the street windows and I stood by the side of the bed and cocked the gun and fired at the police car. I knew there was an*d* officer in uniform at the car and I shot at the car. I saw an officer on the ground by the side of the car and I fired the shot and I shook my head and said to myself 'I shot one and I want shoot any one else.' I later recognized Mr. N. L. 'Slick' Miller lying on the ground and he did not move. I said to myself 'I guess that he is dead.' After firing this first shot I unloaded the empty shell and put another good shell in the gun. I threw the empty hull on the bed. The window was down when I fired the first shot and I broke the window pane when the shot went through it. I walked into the bed room on the East side of the house which faces the street, and in which Mr. Tom Luster sleeps. I held up the shot gun a second time and fired through the window in that room toward the street. This shot also broke a window pane.

"This shot was fired about 5 minutes after I fired the first shot. I then took out the empty hull and threw it on the floor in this same bed room. I then re-loaded the gun again. I heard Mr. Lucian Luster and some officers call to me to come out of the house, but I did not do it. I just stayed in the house. Later some shots were fired at the house and I was afraid they would hit me, so I came out of the house. I went out the back door and I had the shot gun in my hand and I had it loaded and I had

it cocked so that it would shoot, I did not shoot the gun again, but just sat it up next to the house when the officers told me to and went out to the officers.

"I understand right from wrong and I know that it is wrong to shoot any one and I know that it is wrong to kill a person. I know that we have laws against killing people and that if you kill any one that you will be punished for it.

"I went to the 5th grade in school and I am able to read and write. I write letters home and receive letters from home.

"I was mad at Mr. Tom Luster and I told him that if the laws came up that I was going to shoot and they came up and I did shoot.

"I have read this statement and understand the contents of the same and it is my free and voluntary statement. I have not been abused, whipped, threatened or promised immunity from prosecution of the law by any one."

Counsel appointed by the court interposed the defense of insanity, and supported such plea with testimony from expert and non-expert witnesses.

Appellant was subject to convulsions due to her being afflicted with epilepsy. She was paralyzed in her right arm, wrist and hand, and the muscles of her right leg showed some form of weakness.

It appears from all of the evidence that appellant was mentally subnormal. Her mental age was described by some of the witnesses as being from 8 to 10 years, and by others as from 10 to 12 years.

The witnesses differed as to the extent of her mental impairment. Two doctors and several non-expert witnesses expressed the opinion that she was insane, that she did not know right from wrong, and did not know the nature and consequences of her act at the time of the killing.

Other non-expert witnesses expressed the opinion that she did know right from wrong, and though abnormal, had sufficient mentality to know that it was wrong to kill a man.

The trial court submitted to the jury the fact question regarding appellant's mental condition, defining insanity and

placing on appellant the burden of proving by a preponderance of the evidence that she was insane at the time of the killing.

The jury rejected the plea of insanity by their verdict, and found appellant guilty of murder with malice.

It is urged, however, that the verdict of the jury should be set aside as being contrary to the preponderance and great weight of the testimony.

We are aware of no decision by this court wherein a reversal solely on this ground has been ordered, though similar contentions have been often urged. See 18 Tex. Jur. 464; Griffin v. State, 154 Tex. Cr. R. 295, 226 S.W. 2d 869; Ross v. State 153 Tex. Cr. R. 312, 220 S.W. 2d 137; Cavanar v. State, 99 Tex. Cr. R. 446, 269 S.W. 1053; Murray v. State, 147 Texas Cr. R. 474, 182 S.W. 2d 475.

Every person is presumed to be sane, and to have sufficient judgment and reason to be responsible for his acts until the contrary is established. To discharge appellant from such responsibility, it was necessary that she prove by a preponderance of the evidence that her intellect was so disordered that at the time of the killing, she did not know the nature and quality of the act she was doing, or if she did so know, that she was unable to distinguish between the right and the wrong of the particular act charged, that is, murder. See Ex Parte McKenzie, 116 Tex. Cr. R. 144, 28 S. W. 2d 133.

Whether such degree of insanity exists is a question of fact to be determined by the jury. They alone are made the judges of the weight to be given to the testimony of the witnesses and to the opinions expressed by them.

Bill of Exceptions No. 6 complains that the witness Cora Lee Jones was permitted to testify over appellant's objection that on October 6, 1949, the day of the killing, appellant knew it was wrong to kill a man.

This bill was qualified by the trial court who certifies that the only ground of objection urged at the time the witness testified was that it was not shown that the witness was qualified to give such opinion. It is further certified in such qualifications that the objection "was overruled because the witness testified to observation of conduct of and conversation with the defendant on numerous occasions."

Appellant did not except to the qualifications and is bound thereby.

The statement of facts supports the court's finding that the witness showed herself to be qualified to express an opinion that appellant was sane.

Before a layman may testify that a party is insane, he must give some act, omission or peculiarity upon which the opinion is formed, but no such predicate is required to make admissible his conclusion that a party is sane. See Walthall v. State, 144 Tex. Cr. R. 585, 165 S.W. 2d 184.

In Langhorn v. State, 105 Tex. Cr. R. 470, 289 S.W. 57, the rule regarding the predicate for such non-expert opinions was discussed, and this court held that though no exact rule could be laid down, and the qualifications of the witness to express an opinion on a party's sanity or insanity must be left largely to the discretion of the trial court; that if a witness testifies to actual personal conversations with and observations of the party whose sanity is under investigation, he may be allowed to express his opinion.

When a non-expert witness is allowed to express an opinion that the accused is sane, there seems no reason why he should not also be permitted to express an opinion that he knows right from wrong. See Stout v. State, 142 Tex. Cr. R. 537, 155 S.W. 2d 374.

The test as to knowledge of right and wrong applying to the offense for which appellant was on trial, we see no error in permitting the witness to express the opinion that appellant knew it was wrong to kill a man.

In Hale v. State, 121 Tex. Cr. R. 364, 51 S.W. 2d 611, testimony of the sheriff and other officers who saw, talked with and observed the accused frequently between the time of the homicide and his trial to the effect that they were of the opinion that he was not insane and that he knew it was wrong to kill a man was held to have been properly received.

What has been said regarding this bill disposes also of other similar bills relating to the testimony of other non-expert witnesses.

Appellant complains of the overruling of his motion for con-

tinuance based upon the absence of the witness Jim Stewart, who it is averred would testify to certain acts and conduct of appellant upon the basis of which the witness would express the opinion that she was insane.

At a prior setting of the case on January 31, 1950, appellant sought a continuance because of the absence of this witness and in response thereto, the trial was postponed until April 3, 1950, at which time the court overruled the present application for continuance.

Under such facts, the application for continuance filed and overruled on April 3, 1950, was a second application for continuance. See Winfrey v. State, 122 Tex. Cr. R. 480, 55 S.W. 2d 1046; Mullin v. State, 114 Tex. Cr. R. 225, 24 S. W. 2d 423; Wheeler v. State, 118 Tex. Cr. R. 358, 42 S.W. 2d 69.

We are unable to agree that the trial court abused his discretion in overruling such second application because of the absence of this non-expert witness whose expected testimony would have been to the same effect as other lay witnesses who testified that appellant was in their opinion insane.

Appellant insists that error is shown by his Bill of Exception No. 2 relating to the admission of the written statement of appellant. It is argued that it is "elementary" and "fundamental" that a person should not be permitted to testify or be called upon to express an opinion as to his or her own sanity. This bill concerns that part of said statement wherein she said "I understand right from wrong and I know that it is wrong to shoot anyone and I know that it is wrong to kill a person. I know that we have laws against killing people and that if you kill anyone that you will be punished for it."

We are cited to no authority to the effect that such admission by appellant was improperly received.

As the argument suggests, such statement might have little weight as evidence of the condition of the mind of appellant. But taken in connection with her full account of her acts and conduct, we see no error in admitting in evidence appellant's admission that she knew that such act in killing the deceased was wrong, and criminal.

Exceptions were reserved to the overruling of certain objections to the court's charge.

The trial court prepared his charge containing sixteen numbered paragraphs and furnished same to counsel for examination. Objections were filed to such charge numbered 1 to 28 inclusive which were overruled by the trial court "except as changed to meet the above objections."

A corrected charge was then furnished counsel consisting of paragraphs numbered 1 to 14 inclusive, and 14a.

Objections were filed to this draft of the charge numbered 1 to 10 inclusive, the first objection renewing by reference the former objections.

These objections were filed bearing the following certificate of the trial judge:

"Submitted and considered by the court and charge altered in several places to conform to above objections."

The charge as given to the jury contains 13 numbered paragraphs, following which are several unnumbered instructions of an admonitory nature to which no further objections appear to have been made.

Bill of Exception No. 12 sets forth that "it was understood and agreed that each of said objections would be considered as an objection to that part of the court's charge to which it related when the court's charge was finally completed and read to the jury." It is further shown by this bill that exception was taken "to the action of the court in overruling such objections, and each of them which had not been cured."

Appellant's original objections Nos. 20 to 23 inclusive were specifically directed to paragraph 14 of the court's charge.

No such numbered paragraph appears in the charge as given, nor does the language appear in any unnumbered paragraph following paragraph 13 of the charge.

From the brief of appellant, it is sought to apply such objections and exceptions to the language of numbered paragraph 12 of the charge.

This court would not be authorized to apply the objections to other paragraphs of the charge to which no such objection

was interposed. See Barkley v. State, 152 Tex. Cr. R. 376; 214 S.W. 2d 287.

In paragraph 11 of the charge, the jury was instructed as to the degree of mental impairment which would entitle appellant to an acquittal on the ground of insanity.

Appellant objected to the last part of said paragraph of the charge reading as follows:

"* * * If, on the other hand, she was of sound mind, capable of reasoning and knowing the acts she was committing to be unlawful and wrong, and knowing the consequences of the act, and had the mental power to resist and refrain from evil, her plea of insanity would not avail her as a defense."

The court did not err in thus stating the converse in connection with his explanation of appellant's defense of insanity. No question is raised as to the accuracy of the instruction both from the standpoint of appellant and of the state.

The jury was entitled to as clear an explanation of the law as could be made, and the trial court appears to have endeavored to fully cover the difficult subject and to assist the jury in an understanding of the fact question to be passed upon by them. We are not impressed with the suggestion that undue emphasis was given to the burden cast on appellant to prove her insanity by a preponderance of the evidence.

Finding no error requiring a reversal and the evidence being deemed sufficient to support the jury's verdict, the judgment is affirmed.

Opinion approved by the court.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant again presses upon us her contention that the evidence touching her insanity was such as requires us to overturn the contrary conclusion of the jury and hold that she was insane. This we are unwilling to do.

While there is ample and sufficient evidence upon which the jury could have reached the conclusion that appellant was in-

sane, there is also evidence sufficient to warrant the conclusion that she was sane at the time of the commission of the offense charged. Under such circumstances, the jury's finding will not be disturbed.

In passing, it may be well to point out that in the cases of Ross v. State, 153 Tex. Cr. R. 312, 220 S. W. 2d 137, and McGee v. State, 155 Tex. Crim. Rep. 639, each carrying the death penalty, the defense of insanity was strongly presented by the facts, and we there applied the same rule as here followed.

Appellant again urges that the witness Cora Lee Jones should not have been permitted to testify that on October 6, 1949, the day of the killing, appellant knew it was wrong to kill a man. In connection with this contention, appellant argues that the witness had not seen the appellant or conversed with her for a period of six months prior to the time she fixed (October 6, 1949) as appellant's knowing that it was wrong to kill a man, and therefore a sufficient predicate was not shown to authorize the testimony.

There is nothing in the bill of exception showing that appellant had not seen the witness for the six-month period mentioned.

As the objection appears in the bill, appellant was objecting to the witness expressing a general opinion that appellant knew it was wrong to kill a man. It was upon this theory that the matter was disposed of originally. The bill does not present for determination the question appellant now insists upon.

The record has again been reviewed, and we remain convinced that reversible error is not reflected.

The motion for rehearing is overruled.

Opinion approved by the court.