**Charles Roy HEFLEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 17303.**

Court of Civil Appeals of Texas,
Fort Worth.

May 12, 1972.

Aultman & Riley, and Ronald Aultman, Fort Worth, for appellant.

Doug Crouch, Crim. Dist. Atty., and Spencer Shropshire, Asst. Dist. Atty., Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This case is one seeking a judgment for restoration of sanity under Art. 46.02, Sec. 3(b), Vernon's Ann. Texas Code of Criminal Procedure.

For purposes of the opinion it must be accepted as undisputed that on the evening of September 10, 1964, a young mother and her two infant children were abducted in the City of Fort Worth, Texas, and driven to a remote area in the Trinity River bottom where appellant as the lone assailant raped the woman. When she cried he stabbed her repeatedly with a knife, causing serious bodily injury, including the loss of an eye, and then he threw the two little boys in the river drowning them. Appellant was subsequently indicted for the murder of the two children and the rape of the woman (Causes 70342, 70343 and 70344, The State of Texas v. Charles Roy Hefley, in the Criminal District Court of Tarrant County, Texas). On May 17, 1965, on motion and affidavit to have his sanity tried prior to trial under said indictments, the appellant was found by a jury to be insane at the time of said offenses and at the time of trial. He was found to be insane in the above numbered causes and in Causes Nos. 76727, 76728, 76801, 76802 and C–2180.

The jury finding of "insane" at time of the alleged offenses constituted an acquittal of the defendant of such offenses. No appeal was made from the judgment based upon the above findings and the appellant was accordingly committed to the Maximum Security Unit, Rusk State Hospital, Rusk, Texas.

Thereafter, on January 27, 1971, the Superintendent of Rusk State Hospital notified the committing court, pursuant to Art. 46.02, Sec. 3(b), Texas Code of Criminal Procedure, that in his opinion the appellant is now sane. This notification opened the door for appellant, Charles Roy Hefley, to again have a trial in a post-commitment proceeding to determine his sanity. At the conclusion of the testimony the trial court, being of the opinion that a fact issue was raised, submitted the issue of sanity to the jury under unchallenged instructions and on July 16, 1971, the jury found that he was insane. Judgment for the State was entered in accordance with the jury's verdict.

This appeal based upon seven points of error is from that judgment.

We affirm.

By his first two points the appellant contends that the trial court erred in not granting his motions for an instructed verdict and a new trial. These points are based on no evidence and insufficient evidence.

We believe the issues involved on this appeal will be better understood if the pertinent provisions of Art. 46.02, V.A.T.S., Sec. 3, Code of Criminal Procedure, are here set forth before discussing the points of error raised by the appellant because the trial was conducted and the court's charge was prepared pursuant to the provisions of this statute which describes in detail the procedure to be followed in a post-commitment jury trial in the committing court. The provisions pertinent to this appeal read as follows:

"(1) The State of Texas shall be represented by the District Attorney or County Attorney of the county from where the person was originally committed. . . .

"(2) The Rules of Civil Procedure shall apply to the selection of the jury, the court's charge to the jury and to all other aspects of the proceedings and trial except when inconsistent with the provisions of this Section.

"(3) Both parties to such proceedings and jury trial shall have the right to appeal the judgment of the committing court to the appropriate Court of Civil Appeals, and such appeals, if any, shall be controlled by the Rules of Civil Procedure, and the Rules of Civil Procedure shall determine when the committing court's judgment is final.

"(4) The burden of proof shall rest on the person committed, by a preponderance of the evidence, and the jury shall be instructed by the court that a person is sane if they believe from a preponderance of the evidence that the person's mental con-

dition is such that the person does not require hospitalization in a mental hospital for the person's own welfare and protection or for the welfare and protection of others." Art. 46.02, V.A.T.S., Sec. 3(d), Code of Criminal Procedure.

Each of three psychiatrists called as witnesses by the appellant testified that in his opinion the appellant was "sane." One added that the appellant was not affected with mental illness and another that he is not suffering from schizophrenia. A fourth psychiatrist, Dr. Harold B. Mindell, called by the State, did not testify as to the appellant's present mental condition. He testified that in 1965, "It was my opinion that the patient at that time was suffering from a major mental illness." The State presented the testimony of a police officer (detective), who had been a member of the Police Department of the City of Fort Worth, Texas, for a period of 23 years. At the time of his investigation of the alleged offenses committed by the appellant in 1964 and again shortly before the postcommitment trial here under consideration this detective had the opportunity to observe and to converse with appellant. He testified that he could not detect any change in him. Thus, according to the testimony of this officer of 23 years experience, if the appellant was insane at the time he committed the alleged offense he had not changed and therefore was still insane. The above summary of the testimony of the three psychiatrists called by the appellant was elicited on direct examination of the witnesses. Each of them in turn was vigorously cross-examined by the attorneys for the State.

■ The trier of the facts, the jury in this case, "could consider the evidence produced upon the cross-examination just the same as it could on direct examination." United States Fidelity and Guaranty Co. v. Jordan, 278 S.W.2d 569 (Amarillo Civ. App., 1955, dism.).

In addition to the above testimony the jury had the opportunity to observe and to study the general appearance, demeanor, actions and reactions of the appellant who was seated at the counsel table during the trial of the cause. The members of the jury had more concentrated time to observe the appellant than did some of the psychiatrists whose opinions were based in part upon their observations of him. As to the demeanor and appearance of the appellant during the trial see § 1532, McCormick and Ray, Texas Law of Evidence, 2d Edition, Ch. 28, "Circumstantial Evidence," infra.

■ The argument of the appellant that he is sane as a matter of law because each of the three psychiatrists called as a witness said that in their opinion he was sane and that no psychiatrist for the State testified that he was insane is untenable. If this were not so a determination of the issue of sanity would be left solely in the hands of psychiatrists and the important function of the jury to make such determination would be vitiated.

■ The issue of sanity is a question of fact to be determined by the jury. The jury is the judge of the credibility of the witnesses and the weight to be given their testimony and to the opinions expressed by them. Wenck v. State, 156 Tex.Cr.R. 50, 238 S.W.2d 793 (Tex.Ct. of Crim.App., 1951). See also Tuchin v. Chambers, 439 S.W.2d 849 (Fort Worth Civ.App., 1969, ref., n.r.e.).

"In situations such as this where a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative evidence." Smith v. Safeway Stores, Inc., 433 S.W.2d 217, 218 (Tyler Civ.App., 1968, writ ref., n.r.e.); Walgreen Drugs, Inc. v. Welch, 442 S.W.2d 842 (Houston Civ.App., 14th Dist., 1969, ref., n.r.e.).

" . . . Our Supreme Court has on many occasions held that the jury in determining facts is not bound by the opinion of witnesses, Simmonds et al. v. St. Louis, B.

& M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332; Fry v. Dixie Motor Coach Corp., 142 Tex. 589, 180 S.W.2d 135; and that opinion testimony does not establish any material fact as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965. . . ." Pitchfork Land and Cattle Company v. King, 335 S.W.2d 624 (Amarillo Civ.App., 1960, reversed ánd rendered in part, and affirmed in part at 162 Tex. 331, 346 S.W.2d 598, 1961); Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155 (1945); Weatherly v. Longoria, 292 S.W.2d 139 (San Antonio Civ. App., 1956, ref., n.r.e.); and Lee v. Howard Broadcasting Corporation, 305 S.W.2d 629 (Houston Civ.App., 1957, no writ hist.).

Associate Justice Pope of the Texas Supreme Court, while serving on the San Antonio Court of Civil Appeals, authored the opinion in the case of Muro v. Houston Fire & Casualty Insurance Co., 329 S.W.2d 326 (San Antonio Civ.App., 1959, ref., n.r.e.). Because of its applicability to the facts of this case we will substitute and underline the substituted words in the first sentence of the following excerpt from that opinion:

"We must determine whether there is evidence, more than a scintilla, which will support the [*jury's finding of insanity*]. 'No evidence' presents a question of law, and the measuring rod requires us to view the evidence most favorably in support of the findings. In our statement of the facts we need only concern ourselves with the evidence which supports the jury's verdict. Shelton v. Belknap, 155 Tex. 37, 282 S.W. 2d 682. . . .

"What may jurors do with conflicting evidence before then? They may disbelieve a witness though he is neither impeached nor contradicted. Cheatham v. Riddle, 12 Tex. 112. They may believe one witness and disbelieve others. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. They may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792. They are not required to depend upon the evidence from a single source. Texas & N. O. Ry. Co. v. New, Tex.Civ.App., 95 S. W.2d 170, 174. They may accept or reject in whole or in part the opinion testimony of physicians. They may accept lay testimony over that of experts. Opinion testimony does not establish material facts as a matter of law. Hood v. Texas Indemnity Ins.Co., 146 Tex. 522, 209 S.W.2d 345; Fry v. Dixie Motor Coach Corporation, 142 Tex. 589, 180 S.W.2d 135; Coxson v. Atlanta Life Ins. Co., 142 Tex 544, 179 S. W.2d 943. 'If the opinions of the experts as given in the evidence do not comport with the jurors' idea of sound logic, the jurors have a right to say so.' Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64."

The finding of the jury that appellant was insane is nothing more than a failure or refusal by the jury to find from a preponderance of the evidence that the appellant was sane. The finding means in law that the appellant failed to discharge his burden of proving that he is sane.

"A jury's answer to a special issue may be disregarded only when it has no support in the evidence or when the issue is immaterial. Rule 301, Texas Rules of Civil Procedure; McDonald, Texas Civil Practice, §§ 17.30–17.32." C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex. Sup., 1966).

■ The general rule is to the effect that a person is presumed to be sane until such time as he is found to be insane and that once found to be insane he is presumed to be insane until such time as he is found to be sane. The presumptions of sanity or insanity of course controls the placing of the burden of proof.

The appellant argues in effect that when his three psychiatrist witnesses testified

that he was "sane" the presumption of "insanity" vanished.

We quote at length from the case of Southland Life Ins. Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854, 857 (Tex.Com. App.,1942, opinion adopted by Sup.Ct.), viz:

"Such is not the majority rule, and is certainly not the rule in this State. Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763; Langlitz v. American Nat. Ins. Co., Tex.Civ.App., 146 S.W. 2d 484, writ dismissed; McCormick & Ray, pp. 58–9, sec. 37, and other cases above cited.

"We agree . . . that a presumption, as such, is not evidence and that it vanished as such in view of the opposing evidence; but we do not agree that the evidentiary facts upon which it was established, could no longer be considered by the trier of the facts. Wigmore on Evidence, 2d Ed., sec. 2491. The section just cited states that if substantial contrary evidence is offered 'the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule,' and that 'it is therefore a fallacy to attribute probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary.'

"The foregoing statement is quoted in an annotation upon the subject in 95 A.L.R. p. 880, as 'the rule which is approved by most text writers and the majority of the courts which have discussed the subject.' In a comment note beginning at 121 A.L.R. 1078, the following statement of the rule, as to whether a presumption is in the nature of evidence to be weighed as such against probative facts to the contrary, is made: 'The majority of courts adhere to the view that a presumption of law, as such, is not in the nature of evidence and has no probative force, and that when some substantial evidence has been introduced tending to overcome the presumption, it disappears entirely from the case. * * * It is clear, however, that the

facts and circumstances which are the basis of a presumption are themselves evidence to be considered by the jury. In such cases, it is not the presumption that the jury considers, as such; they merely consider the facts and draw inferences therefrom.'

"American Jurisprudence, Vol. 20, sec. 166, states the general rule thus: 'The facts which gave rise to a presumption, as distinguished from the presumption itself, are evidentiary; those facts, when established by evidence, remain in the record and may be properly considered by the jury as they tend to sustain a finding of fact presumed, no matter what other facts the record may reveal. It is not the presumption or inference that the jury considers in such cases, but only the facts and whatever inferences flow therefrom.'

"The prima facie case of due receipt of the letter made out by plaintiff in the present case is not conclusively rebutted by the company's evidence tending to establish it was not received; nor is such evidence so clear, positive and disinterested as to overcome (other than as a rule of law) the presumption of fact in the insured's favor."

Because of the nature of the appellant's complaints we have carefully read every word of testimony and examined all of the exhibits which appear in the record of this cause.

■ Based upon our review of the record we find and hold that the evidence created a fact question upon the issue of sanity. Therefore, sanity of the appellant was not established as a matter of law. We further find and hold that the finding of the jury upon the issue of sanity was not so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. Smith v. Safeway Stores, Inc., 433 S.W.2d 217, supra; C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, supra; Walgreen Drugs, Inc. v. Welch, 442 S.W.2d 842, supra; Weiser v. Hampton, 445 S.W.2d 224

(Houston Civ.App., 1st. Dist., 1969, ref., n.r.e.) ; and 38 Texas Law Review 361, 363, article by Justice Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," (1960).

Appellant's points one and two are overruled.

Two motions in limine were filed by the attorneys for the appellant. Each element or paragraph of the motions was "granted with instructions." The nature of such instructions is not revealed by the record.

The appellant's points 3, 4, 5 and 7 assert error on the part of the court in not declaring a mistrial for the reason that the State disregarded the court's order granting his motion in limine to suppress evidence as to (Point 3) any previous sanity hearings; (Point 4) the facts developed in the appellant's original trial or any subsequent hearings; (Point 5) the effect of the jury's verdict particularly with regard to the appellant's discharge if the jury found him to be sane; (Point 7) allowing a representative of the Fort Worth Police Department to testify concerning the mental condition of the appellant. By his sixth (6th) point the appellant contends the court erred in not declaring a mistrial because of the State's attempt to prejudice the jury by referring to an extraneous offense which was not proven by any testimony. This has reference to the questions directed to Dr. James A. Hunter, M.D., on cross-examination, as to whether the appellant had attacked Roger Snowden and pulled his arm from the socket, requiring the attention of Dr. Lex Neal and the services of an orthopedic surgeon from Tyler to reset it. It is noted that the appellant made no effort to prove that the incident referred to did not occur. He chose to ignore rather than to deny it or to explain the circumstances referred to.

With reference to points 3, 4, 5 and 7 which are concerned with the motions in limine we emphasize that the court wrote on each paragraph or element of the motions the words, "granted with instruc-

tions," and that such instructions do not appear in the record. Thus, we are not apprised of the extent to which the motions to suppress evidence were limited by the court's instructions.

■ We find no indication in the record that the attorneys for the State violated or disregarded any of the court's instructions unless it can be inferred from the fact that the court did sustain some of the objections to questions asked of the various witnesses by the State. Since the instructions concerning the motions in limine do not appear in the record we are unable to say that such were disregarded and assuming they were it was incumbent on the defendant to preserve the error, if any, by timely objections.

■ The Texas Supreme Court in 1963 settled the law in Texas by holding that a trial judge can never commit reversible error by just overruling a motion in limine which has as its objective the suppression of evidence. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup., 1963).

In the case at bar the court granted the motions in limine with instructions and no complaint is made of the court's action in this regard or as to such instructions which accompanied the court's granting of the motions to suppress evidence.

In Hartford, supra, the court citing Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366 (1962) said:

"If motion in limine is overruled, a judgment will not be reversed unless the questions or evidence were in fact asked or offered. If they were in fact asked or offered, an objection made at that time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that the mere asking or tendering should require a reversal. In neither case . . . should the error of the trial court in overruling the motion in limine be regarded as harmful or reversible error." See also

City of Wichita Falls v. Jones, 456 S.W.2d 148 (Fort Worth Civ.App., 1970, no writ hist.). This same rule would apply under the facts of this case where the motions to suppress were granted with instructions which seems to infer that the court refused to grant the motions to suppress in the language presented and therefore the instructions of the court would amount to a partial denial of the motions in limine.

Stated another way, appellant's position is that in a hearing to obtain a judgment to restore his sanity the jury should be denied the opportunity to hear any evidence except from witnesses who specialize in psychiatry and that no evidence of the facts leading up to the original judgment finding him insane should be delved into or placed before the jury. Yet it was such evidence that led to the original judgment of insanity which is the basis of the presumption of insanity which prevails until the appellant is found sane. In our opinion it would be impossible under such instructions for the jury to make any determination as to whether the appellant does or does not "require hospitalization in a mental hospital for the person's own welfare and protection or for the welfare and protection of others" as is required by the statute. Art. 46.02, Sec. 3(d) (4), Code of Criminal Procedure, supra.

Dr. Campbell stated that he tried to cover the appellant's entire life and that it was important to ask him about psychiatric history and to get him to discuss with him the circumstances under which the original crime was committed and "Why did you do it." The good doctor further stated that the sum total of what the defendant said was helpful in his final diagnosis.

■ It occurs to us that if the nature of the original crime, the psychiatric history and the outline of the appellant's entire life was important to the doctor's final diagnosis it would be of equal importance to the jury in making its determination. The doctors called as witnesses were only required to state that the appellant in their opinion was sane or insane. The jury was saddled with the awesome responsibility under Article 46.02, Sec. 3, of the Code of Criminal Procedure, supra, to determine whether or not the appellant requires hospitalization in a mental hospital for his own welfare and protection or for the welfare and protection of others. To make this determination the jury was entitled to all of the pertinent facts regarding the behavioral and psychiatric history of the appellant. To hold otherwise would be tantamount to blindfolding the jury. It would permit the psychiatrist's unlimited resort to the pertinent facts and deny the jury access to the same facts. See § 1532, "Evidence to Prove Mental Capacity," McCormick and Ray, Texas Law of Evidence, 2d Edition, Ch. 28, "Circumstantial Evidence," p. 379, infra.

It appears to us that with the exception of advising the jury as to the effect of its answer to the issue involved, which we will later discuss, that all of the other elements of the motions to suppress evidence which the attorneys for the appellant sought to impose by filing the two motions in limine were improper and should have been denied.

To say the least a résumé of the matters above referred to would be relevant to the question of whether hospitalization in a mental hospital is required for the person's own welfare and protection or for the welfare and protection of others.

The Texas Supreme Court in Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, 699 (1941), states the rule of relevancy in these words: "As a general rule, any evidence is relevant and material if it tends to prove, or disprove, any material fact involved in the issue or the question being tried. This rule also embraces evidence which throws light on the transaction itself."

McCormick and Ray, Texas Law of Evidence, 2d Edition, Ch. 28, "Circumstantial Evidence," § 1532, p. 379, states that:

"While the usual method of offering proof of mental capacity is by having experts examine the person before the trial and testify as to their opinion, it may also be proved by circumstantial evidence. . . With reference to conduct it may be said that practically every act of a person's life throws some light on his mental condition, and therefore no limitation can be made as to the kinds of conduct receivable for this purpose. Thus where defendant pleaded insanity evidence that just prior to the alleged offense he was a witness at an important trial and his conduct there indicated he was sane was admissible. Demeanor and appearance of an accused during his trial are circumstances having probative value on the issue of sanity or insanity. . . .

"A mental disorder being usually a continuing condition, its existence at some other time prior or subsequent may have probative value in indicating its existence at the time in question."

Section 1421, "Sanity and Legal Capacity," p. 252, of the same text, states that: "Under the theory upon which opinions of experts are received, a person who is shown to be skilled or experienced in mental diseases may give his opinion, based either upon evidence adduced at the trial or upon a hypothetical state of fact, as to the sanity or insanity of the person in question. While persons offered as experts on this subject are usually alienists, it is not essential that the witness be a specialist in the treatment of mental diseases before his opinion will be received. In fact a person who is not a physician may by virtue of special experience acquire a knowledge which will enable him to draw inferences helpful to the jury.

"Moreover, a witness need not be an expert in order to give an opinion on a question of sanity. The rule has long been settled in this state that the opinion of an ordinary witness, who has had a reasonable opportunity to observe the acts and conduct of the person in question, may be received provided it is preceded or accompanied by a statement of the facts upon which it is based. As pointed out elsewhere, it is believed that the limitation is unsound. Of course the opinion of such a witness could not be based upon a hypothetical question."

■ Based upon the authorities above cited we are of the opinion that any pertinent facts relevant to the question of the present sanity of the appellant which were developed in any previous sanity hearings, the original trial or any subsequent hearings would be admissible. As stated in § 1532 of McCormick and Ray, above set out, ". . . practically every act of a person's life throws some light on his mental condition, and therefore no limitation can be made as to the kinds of conduct receivable for this purpose. . . ." It occurs to us that the number of times, the dates, places, and the identity of the doctors involved in previous sanity hearings would be important to a jury in a case of this type because the jury may conclude that the appellant who was present at all of such hearings learned how to answer most of the questions which would be propounded to him by the doctors in preparation for any future trials.

We overrule points three and four.

■ The fifth point relating to informing the jury that if it found appellant to be sane he would be discharged is without merit.

The judgment dated May 17, 1965, styled The State of Texas v. Charles Roy Hefley, Cause Nos. 70342, 70343 and 70344 was introduced into evidence by agreement and approval of the defendant. The last paragraph of the judgment reads as follows:

"It is further CONSIDERED and ADJUDGED that the defendant, Charles Roy Hefley, is now INSANE and he is hereby remanded and committed to the custody of

the Sheriff of Tarrant County, Texas, and that the Defendant be by the Sheriff of Tarrant County, or some other person authorized by law, taken and conveyed to the Rusk State Hospital, Rusk, Texas, and there delivered to the Superintendent of said Hospital, who is hereby Ordered *to receive said Defendant and him safely keep until such time as Defendant may be declared Sane.*" (Emphasis ours.)

Any jury of average intelligence in reading the above language could readily understand that the appellant would be safely kept in the Rusk State Hospital until such time as he may be declared "sane" and further since the appellant had initiated the present suit he would be anxious for the jury to find him "sane." There are other reasons why this point should be overruled but we believe what we have said is sufficient. We overrule point five (5).

█ We next discuss point seven (7) ahead of point six (6) because point seven (7) relates to allowing representatives of the Fort Worth Police Department to testify as to the mental condition of the appellant and is one of the matters he sought to suppress by motion in limine. We find no merit in point seven (7). In our opinion it was proper to permit the police officer (detective) or any other witness qualified to express an opinion on the matter to testify. In reading the record in this case it appeared to us that the testimony of the officer was too restricted. He should have been given more latitude and freedom to explain his experiences with the appellant and his observation as to appellant's behavior and other matters.

". . . Suffice it to say that the rule is now well settled that where a lay witness has had sufficient opportunity through personal contacts, conversations, association with and observation of the person in question to reasonably form an intelligent opinion as to such person's sanity, based upon his own first-hand knowledge, he is qualified to express such opinion. Chambers v. Winn, 137 Tex. 444, 154

S.W.2d 454; 24 Tex.Jur., § 42, p. 425. . . . The nature and extent of such observations necessary to qualify them to so testify is largely a matter for the determination of the trial court in the light of all the circumstances. 24 Tex.Jur., § 44, p. 430, and cases cited under note 15. The matters complained of by appellant go rather to the weight than to the admissibility of such testimony." Santos v. Morgan, 195 S.W.2d 927 (Austin Civ.App., 1946, ref., n. r. e.).

To the same effect see Upton v. State, 20 S.W.2d 794 (Tex.Ct. of Crim.App., 1929); Shields v. State, 104 Tex.Cr.R. 253, 283 S.W. 844 (1926); McKee v. State, 118 Tex.Cr.R. 479, 42 S.W.2d 77 (1931); Walthall v. State, 144 Tex.Cr.R. 585, 165 S.W.2d 184 (1942); Langhorn v. State, 105 Tex. Cr.R. 470, 289 S.W. 57 (1926); and Wenck v. State, 238 S.W.2d 793, supra.

The case of Hernandez v. State, 157 Tex.Cr.R. 112, 247 S.W.2d 260 (1952) involves the testimony of a jailer who testified on the basis of his observations. There it was said that, "The appellant tendered five witnesses, who testified that, in their judgment, appellant was insane.

"The State offered in rebuttal one witness, the jailer, who testified that he had had appellant under his care and observation for approximately three months following the commission of the offense and prior to the trial, and that he had noticed nothing different about his actions from that of any of his fellow prisoners kept in that portion of the jail reserved for those who were classified as sane, and that he considered appellant a model prisoner. Appellant's contention is that the verdict is against the preponderance of the evidence.

"We have recently held in Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137; McGee v. State, 155 Tex.Cr.R. 639, 238 S.W. 2d 707; and Wenck v. State, 156 Tex.Cr. R. 50, 238 S.W.2d 793, that the question of insanity was a question of fact for the jury; and if there is evidence to support their verdict, we will not disturb the same.

"We hold the evidence of the jailer, though meager, to be sufficient to support the jury's verdict."

We overrule point seven (7).

We have previously commented on point six (6) concerning the court's failure to grant a mistrial on the basis of questions directed to Dr. James A. Hunter, M. D., concerning whether the appellant had ever attacked Roger Snowden. We deem this to be proper cross-examination. It would affect the jury's opinion as to the credibility of the witness and an understanding of what he did or did not consider as basis for his opinion. As previously stated the appellant made no effort to enlighten the jury with regard to this matter. He chose to ignore it.

Whether specifically discussed or not we have carefully examined each of the appellant's points of error and overrule each and all.

The judgment of the trial court is affirmed.