NO. 07-07-0329-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 3, 2007


______________________________



RODGER WAYNE MITCHELL, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 64TH DISTRICT COURT OF CASTRO COUNTY;



NO. A3024-0506; HONORABLE ROBERT W. KINKAID, JR., JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION 


 Appellant Rodger Wayne Mitchell attempts to appeal an order recouping a fine and
court costs from his inmate trust account. Finding we are without jurisdiction because
appellant's notice of appeal was untimely, we dismiss the attempted appeal. 

 On February 1, 2006, a jury found appellant guilty of burglary of a habitation. It
assessed punishment at twenty years confinement in the Texas Department of Corrections
Institutional Division and assessed a fine of $10,000. The trial court's judgment of that
date additionally taxed court costs of $273 against appellant. Appellant appealed the
judgment, which this court affirmed by opinion of October 16, 2006. (1)

 On August 28, 2006, the trial court signed a withdrawal order notifying the
Department of Corrections of appellant's fine and court costs totaling $10,273 and ordering
withdrawal by the Department of funds from appellant's inmate trust account according to
section 501.014 of the Government Code. Tex. Gov't Code Ann. § 501.014 (Vernon
2004). The order specified delivery of a copy of the document to appellant. Also on
August 28, the trial court signed a supplemental order directing the court clerk "assess
costs, fees, and/or fines" against appellant pursuant to section 501.014 and send a
certified copy of the order to the Department and appellant. Appellant states, in a
document filed with this Court, that he learned of deductions from his inmate trust account
on September 4, 2006, and received a copy of the supplemental order on October 5, 2006. 

 On May 23, 2007, appellant, acting pro se, filed a notice of appeal that, among other
things, recited he filed no post-trial motions nor requested findings of fact and conclusions
of law. Also on May 23, with no record on file in this Court, appellant, nevertheless, filed
a brief under the heading "Restricted Appeal From Judgment." The substance of
appellant's complaint is that the trial court's August 28, 2006, order of withdrawal deprived
him of his property without due process of law.

 Because of the time expanse between the August 28, 2006, order and appellant's
notice of appeal, we notified appellant that his notice of appeal appeared untimely. We
abated the case on August 17, 2007, and granted appellant until September 19, 2007, to
file any additional documents or materials he considered necessary for determination of
our jurisdiction. Appellant responded with a letter brief of September 4, 2007, and a
supplemental letter brief of September 6, 2007. We also received a clerk's record on
September 21, 2007.

 A timely notice of appeal is essential to invoke our appellate jurisdiction. In re
A.L.B., 56 S.W.3d 651, 652 (Tex.App.-Waco 2003, no pet.); Slaton v. State, 981 S.W.2d
208, 210 (Tex.Crim.App. 1998). If the notice is untimely, then the court of appeals can
take no action other than to dismiss the proceeding. In re A.L.B, 56 S.W.3d at 652; Slaton,
981 S.W.2d at 210. Here, the order of which appellant complains was signed August 28,
2006. Because the deadline to perfect an appeal from that order was September 27,
2006, appellant's May 23, 2007, notice of appeal was untimely. Tex. R. App. P. 26.2
(stating that one must file a notice of appeal within 30 days of the date the final order is
signed, unless that deadline has been extended by motion or rule of procedure). We must
dismiss the appeal for want of jurisdiction. 

 Appellant's description of his appeal in his brief as a restricted appeal does not
change our conclusion. A notice of restricted appeal must be filed within six months after
the judgment or order appealed is signed. See Tex. R. App. P. 26.1(c). As noted,
appellant's notice was filed almost nine months after the trial court signed the order of
withdrawal of which he complains. (2)

 Accordingly, the appeal is dismissed. 

 James T. Campbell

 Justice
1. The trial court's judgment does not appear in the record currently before us. The
judgment appears in the clerk's record filed in appellant's appeal from the judgment, in
Cause No. 07-06-0056-CR. We take judicial notice of its terms. See Turner v. State, 733
S.W.2d 218, 223 (Tex.Crim.App. 1987) (appellate court may take judicial notice of its own
records in the same or related proceedings involving the same or nearly same parties);
Moore v. Zeller, 153 S.W.3d 262, 264 (Tex.App.-Beaumont 2004, pet denied).
2. We note also that a restricted appeal is limited to civil matters. See Tex. R. App.
P. 30. In Gross v. State, ___ S.W.3d ___, 2007 WL 2089365 (Tex.App.-Amarillo, July
23, 2007) (No. 07-06-0489-CR), we found that an appeal of a similar order directing
withdrawal of funds from an inmate trust account was a criminal matter. But see Abdullah
v. State, 211 S.W.3d 938 (Tex.App.-Texarkana 2007, no pet.) (treating appeal of similar
order as civil appeal).



the evidence, we may
not reverse merely because we conclude that the evidence preponderates toward an
affirmative answer. Id. 

B. Incompetency and Undue Influence

 Absent proof and determination of mental incapacity, a person who signs a
document is presumed to have read and understood the document. See Reyes v. Storage
& Processors, Inc., 995 S.W.2d 722, 725 (Tex.App.--San Antonio 1999, pet. denied).
Elderly persons are not presumptively incompetent. Edward D. Jones & Co. v. Fletcher,
975 S.W.2d 539, 545 (Tex. 1998). A person may be incompetent at one time but
competent at another time. See Hefley v. State, 480 S.W.2d 810 (Tex.Civ.App.--Fort
Worth 1972, no writ). The rights of incompetents are generally protected by rules that in
some circumstances void transactions in which they are involved, and by the availability
of guardianships. See Fletcher, 975 S.W.2d at 544-45; Restatement (Second) of
Contracts § 15 (1981).

 In deciding whether undue influence resulted in execution of a document, three
factors are to be considered: (1) the existence and exertion of an influence; (2) whether
the influence operated to subvert or overpower the grantor's mind when the deed was 
executed; and (3) whether the grantor would not have executed the deed but for the
influence. Dulak v. Dulak, 513 S.W.2d 205, 209 (Tex.1974). III. ANALYSIS

A. Lillie's Competency (3)

 Both the deed in question and the signature card to the American State Bank
account were presented to Lillie Dubree by persons who did not testify at trial. Edward
testified that the deed by which Lillie transferred the house to him was presented to Lillie
by a realtor. The deed was notarized. A representative of American State Bank presented
the account signature card by which Lillie designated the bank account as a joint account
with the right of survivorship. No witness testified as to Lillie's mental condition at the very
time she actually signed either the deed to the house or the bank signature card. 

 Evidence before the jury was conflicting as to whether Lillie was competent during
the time frame in which the documents were executed, but no evidence was adduced as
to Lillie's mental condition at the specific times she executed the documents. Two expert
witnesses testified that Lillie had diminished mental capacity in general; one of the experts
testified that persons could generally have diminished mental capacity but have periods
of lucidity and understanding; Edward testified that Lillie was coherent and mentally
capable to handle her affairs during his bi-weekly personal visits with her; Marshall opined
that based on his personal experiences with her, Lillie was not mentally competent to
handle her business. Marshall urges that the testimony of the expert witnesses and
Marshall overcome the presumption that Lillie was competent to execute the documents
and the testimony of Edward that Lillie was competent to manage her affairs. We
disagree.

 The jury was able to observe the witnesses and determine the weight to be given
their testimony. Expert witness opinion testimony as to the competency of a person is not
conclusive as to competency, and must be evaluated by a jury along with the other
evidence presented. See Gregory v. Texas Employers Ins. Ass'n, 530 S.W.2d 105, 107
(Tex.1975) (while the expert witness's testimony must be taken as true insofar as it
establishes facts, the opinions of the expert as to deductions from those facts is never
binding on the trier of facts, even though not contradicted by an opposing expert). 
Moreover, as we have previously noted, no witness testified as to Lillie's mental condition
at the very time she executed either the deed or the bank account signature card. 
According to one of Marshall's expert witnesses, persons can generally have diminished
mental capacity or dementia and yet have "lucid, clear moments." Assuming, arguendo,
that the testimony as to Lillie's general mental state around the time she signed the deed
and bank account signature card would have been sufficient for the jury to find that she did
not have sufficient mind and memory to understand the nature and consequences of her
acts and the business she was transacting, the evidence was not such that the jury's
finding otherwise was so against the great weight and preponderance of the evidence that
it is manifestly unjust. See Herbert, 754 S.W.2d at 144. We overrule appellant's first and
fourth issues. 

B. Undue influence

 As we have previously noted, Edward was not present when Lillie executed either
the deed or the bank account signature card. The documents were presented to Lillie by
third parties not related to or alleged to have been under the control of Edward. Edward
testified without contradiction that he was unaware that Lillie was going to sign a bank
account card changing her American State Bank account to a joint account with the right
of survivorship. Edward testified that he merely asked Lillie to deed the house to him so
he could sell it to pay her medical bills, if necessary. There was no evidence that Edward
exerted any influence on Lillie to sign the deed, other than making a suggestion that she
sign the deed. Dr. Richard Wall, a psychologist who testified for Marshall, opined that
Lillie was in such a general mental condition that she would have been susceptible to
suggestions from persons she trusted. 

 The trial court defined "undue influence" as

 . . . such dominion and control exercised over the mind of the person executing the
document, under the facts and circumstances then existing, as to overcome
[Lillie's] free will. In effect the will of the party exercising undue influence was
substituted for that of the party signing the document, preventing her from
exercising her own discretion and causing her to do what she would not have done,
but for such dominion and control. 

The jury failed to find that Lillie was under the undue influence of Edward on either the day
she executed the deed or the day she signed the card changing her bank account to a joint
account with the right of survivorship. As in his claims that Lillie was not competent to
execute the documents, Marshall does not refer us to evidence of Lillie's mental condition
at the specific times she executed the documents. An expert witness testified that Lillie
was generally susceptible to suggestions of persons she trusted; Edward testified that
Lillie was independent and made her own decisions based on observations he made
during his bi-weekly personal visits with her. The evidence does not address the
discussions which logically must have occurred between Lillie and the realtor and bank
representative who actually presented the documents for Lillie to sign. 

 The jury was to judge the credibility of the witnesses and determine the weight to
give their testimony, including that of Marshall's expert, in light of all the evidence. See
Gregory, 530 S.W.2d at 107. Assuming, arguendo, that the expert testimony and other
evidence would have been sufficient for the jury to find that Lillie was unduly influenced
by Edward so that in signing the deed her free will and discretion were replaced by that
of Edward, and that she would not have signed the deed absent Edward's dominion and
control, our review of all the evidence does not lead us to conclude that the jury's failure
to so find was so against the great weight and preponderance of the evidence that it is
manifestly unjust. See Herbert, 754 S.W.2d at 144. We reach the same conclusion as to
Lillie's signing of the signature card changing her American State Bank account. Only as
to the bank account, Marshall refers us to no evidence that Edward ever even discussed
the subject with Lillie, or in any way exerted influence on her to change the status of her
account. Accordingly, we overrule Marshall's second and fifth issues. 

IV. CONCLUSION

 Having overruled all of appellant's issues, we affirm the judgment of the trial court. 


 Phil Johnson

 Justice



Publish.
1. Neither party objected to the jury charge as submitted, and the charge is not
challenged on appeal. When no objection is made to the jury charge, evidence to support
findings based on the questions and instructions should be assessed in light of the charge
given, even if the charge is not entirely correct. See City of Fort Worth v. Zimlich, 29
S.W.3d 62, 71 (Tex. 2000). 
2. Marshall numbers his issues as one, two, four and five. To avoid confusion we will
address the issues as numbered by Marshall. Thus, we will not address issue three; there
is not an issue three. 
3. Edward does not challenge the jury charge for failing to submit questions as to
Lillie's state of mind at the time she actually executed the deed and bank account
signature card, either as to Marshall's allegations of incompetency or undue influence.